Lorain TOLLIVER, Plaintiff-Appellant,

v.

NORTHROP CORPORATION, Defendant-Appellee.

No. 85–1131.

United States Court of Appeals, Seventh Circuit.

Argued March 4, 1986.
Decided March 14, 1986.

Charles A. Linn, Arnold & Kadjan, Chicago, Ill., for plaintiff-appellant.

Lisa Marco Kouba, Clausen, Miller, Gorman, Caffrey & Witous, PC, Chicago, Ill., for defendant-appellee.

Before BAUER, POSNER, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

The Northrop Defense System Division of Northrop Corp. fired Lorain Tolliver. She responded with this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., charging that Northrop fired her because of her race. The EEOC found "[n]o reasonable cause ... to believe that the allegations made in [the] charge are true" but issued a right-to-sue letter, as Title VII requires. The court appointed a lawyer for Tolliver. This lawyer quit or was let go because of irreconcilable differences about the merit of the suit and the strategy for prosecuting it. Northrop then insisted on a prompt response to pending requests for discovery. Tolliver's failure to answer the pending interrogatories led the district judge to dismiss the suit.

Tolliver's first lawyer withdrew on September 13, 1984. She asked the court to appoint another; the judge declined and told Tolliver that unless she retained counsel "you are going to be your own lawyer." After a phone conversation led counsel for Northrop to think that Tolliver would not answer the pending interrogatories unless ordered to do so, counsel asked the district court to compel an answer. In open court on September 27, the judge directed Tolliver to answer by October 9 and to appear for a deposition on October 19. Just in case things were unclear, the judge explained to Tolliver:

> You understand that if an attorney does not undertake your representation, that you will have to respond to the discovery requests and answer those interrogatories under oath, because if you don't do that, under the rules, the court will dismiss the case for failure to comply with this order. Do you understand?

To this Tolliver replied: "Yes, sir."

October 9 arrived, but the answers to the interrogatories did not. On October 12 the court dismissed the case. Notice of this

did not reach Tolliver for some time. Meanwhile, she did not appear for the deposition on October 19.

Tolliver did not appeal. Instead she filed a motion on November 7 to vacate the dismissal and restore the case to the docket. This motion was based on Fed.R.Civ.P. 60(b). The district court granted Tolliver time to obtain new counsel to amplify the motion. She did; they did; but the court ultimately refused to reinstate the case.

Tolliver's story is that on September 28, 1984, she met with a new attorney who had promised to represent her. She gave him the case file, including handwritten answers to the interrogatories; he promised to take care of things. (Tolliver apparently had written out answers no later than September 13.) This attorney did not enter an appearance or file the answers. Tolliver asserts that she thought she needed to do nothing. She adhered to this self-imposed obligation, neither filing answers nor appearing for the deposition nor checking with counsel to be sure that he did what was necessary. When she was due for the deposition on October 19, she was meeting with her lawyer instead, and her lawyer did not suggest that she do anything. Indeed, according to Tolliver, her lawyer did not tell her that the case had been dismissed. On November 2 this lawyer returned her retainer, withdrew from the representation, told her about the dismissal, and gave her a draft motion to vacate that he suggested she file *pro se*. She did. Her lawyers in this court are her third set of counsel.

It may be that Tolliver has a good malpractice action against her second lawyer. It may be that Tolliver would have had a strong claim on appeal from the dismissal. The case was filed in late April and so was not six months old when dismissed; the answers were only three days overdue; Tolliver may have relied on counsel to type out her handwritten answers and file them; and to make matters worse counsel for Northrop gave only two days' notice (by mail!) that it would move to dismiss, while the local rules require seven days' notice. Tolliver was unrepresented at the hearing on October 12. A court would be hard pressed to call this default the sort of wilful, bad faith conduct that is the usual precursor of dismissal. See *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958).

■ This case is here under Rule 60(b), however, and the standard of review is accordingly deferential. (We do not think the short notice made the decision of October 12 "void." The court could have made the same decision on its own motion, given the colloquy in open court.) After an exhaustive analysis of our cases concerning the use of Rule 60(b) motions to reinstate cases, we concluded that when "the defaulting party has willfully chosen not to conduct its litigation with the degree of diligence and [expedition] prescribed by the trial court, this circuit has repeatedly upheld the trial court's denial of a rule 60(b) motion." *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir.1984). Many cases say that district judges should reinstate actions "liberally," but this means, we said, liberality "only in the exceptional circumstance where the events contributing to the default judgment have not been within the meaningful control of the defaulting party, or its attorney." *Id.* at 1206. This is topped off with a limit on appellate review. We may order a case reinstated only if the district judge has abused his discretion. And "abuse of discretion" in cases under Rule 60(b) is restricted review indeed. It limits review to cases in which no reasonable person could agree with the district court's decision. *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 830–32 (7th Cir.1985).

■ The restricted scope of review responds to the interest all parties have in finality. There must be an end to litigation, and although Rule 60(b) motions may keep a case alive there is a strong presumption in favor of a decision by the district court to let things be. The original decision to dismiss a case is protected by highly deferential review. *National Hockey League v. Metropolitan Hockey Club*,

*Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed. 747 (1976). The district judge supervises the case and can make an astute judgment about whether the plaintiff's noncompliance is deliberate (and about whether more time would allow things to proceed). The decision under Rule 60(b) is discretion piled on discretion, and as we said in *Metlyn* such doubly discretionary decisions stand unless the judge was very far off base—if the judge relied on forbidden factors or omitted to consider some important relevant factor.

The district judge did not give a reason for denying Tolliver's motion to reinstate. There is no suggestion, however, that the judge acted for an improper reason, and several proper ones would have supported the decision. The court gave Tolliver a firm deadline and warned her of the consequences of default. After acknowledging this warning, Tolliver still did not answer the interrogatories—even though she had already written out the answers. Although she blames her lawyer for the failure, a litigant is bound by his lawyer's acts. *Link v. Wabash R.R.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); *Inryco, Inc. v. Metropolitan Engineering Co.*, 708 F.2d 1225, 1234 (7th Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 347, 78 L.Ed.2d 313 (1983). Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good—the neglect would protect the client, and because the client could not suffer the lawyer would not suffer either. See *Boyle v. United States*, 710 F.2d 1251, 1257–58 (7th Cir. 1983) (dissenting opinion), *reversed*, — U.S. ——, 105 S.Ct. 687, 83 L.Ed. 622 (1985). The court's power to dismiss a case is designed both to elicit action from the parties in the case at hand and to induce litigants and lawyers in other cases to adhere to timetables. *National Hockey League, supra.* A court cannot lightly excuse a litigant because of the lawyer's neglect without abandoning the pursuit of these objectives. Tolliver does not suggest that supplying answers was not "within the meaningful control of the defaulting party, or its attorney." *C.K.S. Engineers, supra,* 726 F.2d at 1206. She says only that her attorney was asleep on the job.

Equally important, Tolliver has yet to supply the answers to the interrogatories. If the district judge had reinstated this action, Tolliver could have continued to stall. We think it a sound practice to insist, as a condition of reinstating a case under Rule 60(b), that the defaulting party cure all defaults still within his power to cure. See *C.K.S. Engineers, supra,* 726 F.2d at 1208 (emphasizing continuing default as support of the district court's decision not to reinstate). It would take an extraordinary set of facts—one we cannot now imagine—to make a case of "abuse of discretion" in failing to restore to the docket a case in which the defaulting party is still in default at the time the district judge rules on the motion to vacate. *National Hockey League* held that even if a party has cured its default a court may dismiss the action to achieve general deterrence, that is, to warn people who are not parties to the case. To reinstate a case in which the party remains in default is to abandon all hope of both general and specific deterrence, that is, the effect on the future behavior of the person subject to the sanction. It is to remove the sanction without even eliciting compliance with the order that led to the dismissal. A judge need not meekly reinstate a case in which a curable default continues. Tolliver did not cure her default in the district court, and she has not done so to this day.

AFFIRMED.