**WESCO PRODUCTS CO. and Donald Horwitz, Plaintiffs–Appellees,**

v.

**ALLOY AUTOMOTIVE CO., Defendant–Appellant,**

**and**

**Continental Illinois National Bank and Trust Co., Defendant.**

**Nos. 88 C 2078, 81 A 3141.**

United States District Court, N.D. Illinois, E.D.

Aug. 18, 1988.

Forrest L. Ingram, J. Douglas Weingarten, J. Barton Kalish, J. Barton Kalish & Colleagues, Chicago, Ill., for plaintiffs-appellees.

Myron M. Cherry, Cherry & Flynn, Chicago, Ill., for defendant.

MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on appeal from the United States Bankruptcy Court.

For the following reasons, the decision below is affirmed.

## FACTS

In 1981, appellee Wesco Products Company ("Wesco"), then the debtor, filed an adversary proceeding (No. 81 A 3141) against appellant Alloy Automotive Company ("Alloy") and Continental Bank as part of a Chapter 11 case (No. 80 B 13232) in the United States Bankruptcy Court. On January 11, 1985, Bankruptcy Judge Eisen dismissed No. 80 B 13232 for failure to file a plan. In the order, Judge Eisen stated that No. 81 A 3141 "is rendered moot by the dismissal of the bankruptcy case and is therefore adjourned sine die." (Record on Appeal, at Ex. 6). This order was entered on the docket of No. 80 B 13232, the bankruptcy case, but somehow was *not* entered on the docket of No. 81 A 3141, the adversary proceeding.

In early August, 1986, Judge Eisen caused notice to be sent to the parties in No. 81 A 3141 informing them that a status hearing had been scheduled for September 2, 1986, "to determine whether or not the adversary proceeding should be adjourned without further date." (R. 4). The notice also stated: "Please note that failure to appear at this status hearing will result in this adversary proceeding to be dismissed [sic] with leave to reinstate." (R. 4).

When No. 81 A 3141 was called on September 2, 1986, none of the parties appeared in court. The case was then dismissed. Two separate entries dated September 2, 1986 appear on the docket of the adversary proceeding. The first reads: "Hearing Re status and/or dismissal held and adjourned sine die." The second states: "ORDER, that the Plaintiff's complaint is dismissed for want of prosecution. (Eisen) (BC–6) EOD Sep 15 1986." (R. 6).

After the bankruptcy case was dismissed in 1985, and before the September, 1986 proceeding before Judge Eisen, Wesco joined in a pending lawsuit brought against Alloy and others by Donald Horwitz, Wesco's president and sole shareholder. In that case (No. 84 C 10909), which currently is pending before Judge Bua, Alloy moved for summary judgment in January, 1988, and claimed that the action against it was barred by the doctrine of res judicata due to the September 2, 1986 dismissal in No. 81 A 3141. Wesco then filed a "Motion to Correct Clerical Error and to Vacate Order of September 2, 1986" in the bankruptcy court on January 15, 1988. The motion was heard by Judge Wedoff, to whom the case had been reassigned following the retirement of Judge Eisen.

Judge Wedoff granted Wesco's motion on January 29, 1988, and read his findings and conclusions into the record. (R. 13). Judge Wedoff found that the outcome of the motion hinged on the meaning of the phrase "adjourned sine die," which Judge Eisen had used in his order of January 11, 1985. If Judge Eisen's intent in using the phrase had been to dismiss the adversary proceeding in 1985, Judge Wedoff reasoned, then the dismissal for want to prosecution in 1986 would have been unnecessary and would have occurred only as a result of the clerical error committed in not recording the 1985 "adjournment sine die" on the docket of the adversary proceeding.

After a detailed examination of the record, Judge Wedoff found that Judge Eisen, by use of the phrase "adjournment sine die," had intended that No. 81 A 3141 be dismissed at the same time as No. 80 B 13232, and that the parties need not again appear before him.

Judge Wedoff further found that the September 2, 1986 status hearing was simply a housekeeping matter and that the active parties in the bankruptcy case understood that the adversary proceeding already had been adjourned, so that they did not have any reason to appear. (R. 13, at 14). He concluded that if the docket had been correct, the dismissal for want of prosecution would not have been entered. Judge Wedoff ruled that vacation of the 1986 dismissal therefore was appropriate under both Federal Rule of Civil Procedure 60(a) and Rule 60(b)(6).

Alloy subsequently appealed Judge Wedoff's decision to this Court pursuant to 28 U.S.C. § 158(a).

## DISCUSSION

### I. *The Standard of Review*

"On an appeal [from the bankruptcy court] the district court or bankruptcy appellate panel may affirm, modify or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact ... shall not be set aside unless clearly erroneous...." Federal Bankruptcy Rule 8013. The standard of review of factual determinations made by the bankruptcy court therefore is one of great deference.

The standard of review of grant or denial of a motion brought under Federal Rule of Civil Procedure 60 also is very deferential. Such a judgment will be reversed only if the lower court abused its discretion, and in order "to find an abuse of discretion under Rule 60(b), the appellate court must be convinced that 'no reasonable man could agree with the [lower] court's decision.'" *Margoles v. Johns*, 798 F.2d 1069, 1072 (7th Cir.1986), quoting *Tolliver v. Northrop Corp.*, 786 F.2d 316, 318 (7th Cir.1986).

### II. *Rule 60*

Rule 60 states, in relevant part:

**(a) Clerical mistakes**

Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

\*    \*    \*    \*    \*    \*

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4)

the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60.

Alloy argues that the Bankruptcy Court misapplied both Rule 60(a) and rule 60(b)(6) in granting Wesco's motion. Alloy essentially argues (1) that Rule 60(a) can be used only to correct clerical mistakes and not to correct mistakes of fact made by a judge, and therefore does not apply here; and (2) that Wesco's motion to vacate properly fit under Rule 60(b)(1), and therefore could not be granted under Rule 60(b)(6).

As it clear from its language, Rule 60(a) was intended to be used to correct clerical errors. The Seventh Circuit has summarized the rule as follows: "If the flaw lies in the translation of the original meaning to the judgment, then Rule 60(a) allows a correction; if the judgment captures the original meaning but is infected by error, then the parties must seek another source of authority to correct the mistake." *United States v. Griffin*, 782 F.2d 1393, 1396–97 (7th Cir.1986).

■ Applying this principle to the present case, it is clear that Judge Wedoff acted properly in ordering that the docket in No. 81 A 3141 be corrected to reflect Judge Eisen's order of January 11, 1985. The failure to enter the order on the docket was clerical in nature and could be corrected at any time.

Alloy contends, however, that the Bankruptcy Court could not vacate Judge Eisen's September 2, 1986 dismissal of No. 81 A 3141 pursuant to Rule 60(a), because no clerical error was made at that time; any error made on September 2nd, Alloy con-

tends, was one of fact, and therefore outside the scope of Rule 60(a).

Judge Wedoff propounded two bases for vacating the September 2nd dismissal. He stated:

[I]t is appropriate for the vacation to take place either under Rule 60A, clerical error, on the theory that an entry in the docket of the Court in the adversary proceeding indicating that it had been adjourned sine die would have prevented the later dismissal for want of prosecution, or on the ground that there is other cause for the vacation of that judgment.

And the other cause here would be the effect of the original adjournment sine die was a dismissal of the adversary pleading, there was no reason for a later dismissal for want of prosecution. [sic].

R. 13 at 15. Although Judge Wedoff's reasoning has merit, Rule 60(a) does not provide a proper avenue by which to vacate Judge Eisen's second order. The dismissal order entered by Judge Eisen on September 2nd may have come about as a result of the earlier clerical error, but no clerical error was made on September 2nd. Judge Eisen clearly intended to dismiss, or adjourn sine die, No. 81 A 3141, even though his intent likely was formed as a result of the mistaken belief that he had not dismissed the case previously.

█ Rule 60(b)(6) formed the other basis of Judge Wedoff's decision to vacate the September 2nd order. A "decision [made] under Rule 60(b) is discretion piled on discretion, and . . . such doubly discretionary decisions stand unless the judge was very far off base—if the judge relied on forbidden factors or omitted to consider some important relevant factor." *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir.1986); *see also North Central Illinois Laborers' Dist. Council v. S.J. Groves & Sons Co., Inc.*, 842 F.2d 164, 168 (7th Cir. 1988).

This Court finds that Judge Wedoff was not "off base"—in fact, he was very much on base. Although "relief under 60(b)(6) is warranted only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust," *Margoles v. Johns*, 798 F.2d

1069, 1073 (7th Cir.1986), this is one of those rare cases where such circumstances exist.

The first step taken by Judge Wedoff in his analysis was an examination of Judge Eisen's January 11, 1985 order, and specifically the meaning of "adjourned sine die." Black's Law Dictionary defines "sine die":

Without day; without assigning a day for a further meeting or hearing. Hence, a legislative body adjourns sine die when it adjourns without appointing a day on which to appear or assemble again. *State ex rel. Jones v. Atterbury*, Mo., 300 S.W.2d 806, 811.

*A final adjournment; final dismissal of a cause. Quod eat sine die*, that he go without day; the old form of a judgment for the defendant, i.e., a judgment discharging the defendant from any further appearance in court.

Black's Law Dictionary 1242 (5th ed. 1979) (emphasis added). In the context of the January 11th order, Judge Wedoff found that Judge Eisen intended that the adversary proceeding be dismissed along with the bankruptcy case, and that he did not expect the parties to appear before him again. (R. 13 at 11–13). Judge Wedoff's finding makes sense in light of Judge Eisen's conclusion "that the adversary proceeding is rendered moot by the dismissal of the bankruptcy case and is therefore adjourned sine die." (Ex. 6, App. A). As Judge Wedoff noted, Judge Eisen considered the adversary proceeding to be moot, so there would have been no reason for him to retain it on his docket.

The circumstances surrounding the September 2, 1986 status call also support Judge Wedoff's finding. The language in the notice scheduling the status hearing that was mailed to the parties stated that the court was "setting the status hearing to determine whether or not the adversary proceeding should be adjourned without further date." (R. 4). "Adjourned without further date" is one of the meanings of "adjourned sine die," the language contained in the January 11, 1985 order. The notice went on to state that "failure to appear at this status hearing will result in this adversary proceeding to be dismissed [sic] with leave to reinstate." (Ex. 4).

Judge Wedoff found that the September 2nd status was scheduled and called along with a number of other cases of which Judge Eisen was attempting to determine the status. In each of those cases, if neither of the parties showed up, then the case was dismissed for want of prosecution. When neither side appeared in No. 81 A 3141, that same procedure was followed.

Logic dictates the conclusion that if the January 11, 1985 order had been properly entered on the adversary docket, as it should have been, then Judge Eisen would not have scheduled the September 2, 1986 status hearing, because the case would not have fallen into the category of cases which were called for "housekeeping" purposes on September 2, 1986. The rub here, however, is that the re-dismissal of the case on September 2nd was not just unnecessary; it also has the potential to cause inequitable consequences for Wesco.

Alloy apparently has seized on the unnecessary, second dismissal of No. 81 A 3141 "for want of prosecution" and argued in No. 84 C 10909 that it has a res judicata effect with regard to Wesco's claims against Alloy. This tactic is what originally prompted Wesco to bring its motion to vacate in No. 81 A 3141. Alloy argues, however, that Wesco lacked the necessary diligence and timeliness in bringing its Rule 60 motion, and that Judge Wedoff therefore erred in granting it.

This Court disagrees. Wesco did not lack diligence or timeliness, either in failing to appear at the September 2, 1986 status hearing or in bringing its motion pursuant to Rule 60. Wesco had no reason to think it necessary to appear at the hearing, since it believed (not unreasonably) that the case was dismissed in 1985. Furthermore, even if the case had not been dismissed in 1985, the notice for the September 2, 1986 hearing specifically and clearly stated that failure to appear would result only in a dismissal *without prejudice*. No mention was made of the possibility of a dismissal for want of prosecution, with the potential reinstatement problems that such a dismissal might engender. While it would have behooved Wesco to check the adversary docket after September 2nd to make sure that the court's order was in accord with its

pre-hearing notice, it cannot be said that Wesco lacked diligence by not doing so, or that Wesco was wrong in relying on the pre-hearing notice sent out by the court. Moreover, Wesco apparently filed its motion to correct as soon as it discovered that a problem existed, which was when Alloy raised its res judicata argument in No. 84 C 10909.

In sum, this case presents a set "of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust." *Margoles*, 798 F.2d at 1073. The importance of preserving the finality of judgments cannot be overlooked, and Rule 60 motions should not be granted lightly, but in this case Judge Wedoff's decision to vacate Judge Eisen's September 2, 1986 dismissal for want of prosecution was carefully considered and supported by the facts. The decision would be justified even absent Alloy's attempt to use the 1986 order as a bar to consideration of Wesco's claims in No. 84 C 10909; that attempt only served to make Wesco's Rule 60 motion even more appropriate.

## CONCLUSION

For the foregoing reasons, the Court finds that Judge Wedoff did not abuse his discretion in granting Wesco's motion. That decision is affirmed.