Frank DANIELS, Plaintiff–Appellant,

v.

Bernard J. BRENNAN,
Defendant–Appellee.

No. 88–2878.

United States Court of Appeals,
Seventh Circuit.

Argued April 19, 1989.

Decided Oct. 17, 1989.

Cynthia G. Bowman, Sheila Berner, Northwestern University Legal Clinic, Chicago, Ill., for plaintiff-appellee.

Judson H. Miner, CC, Ruth M. Moscovitch, ACC, Appeals Div., Mary L. Mikva, Appeals Div., Office of Corp. Counsel, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, POSNER, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

This appeal arises out of a dismissal of this case by the district court for plaintiff's want of prosecution. Plaintiff, Frank Daniels, raises three issues in this appeal. First, he asserts that the district court abused its discretion by allowing his attor-

ney, Mr. Zuganelis, to withdraw as counsel of record. Second, he argues that the district court abused its discretion by *sua sponte* dismissing his case for lack of prosecution. Third, plaintiff claims that the district court abused its discretion by denying his postjudgment *"pro se"* motion for relief under Federal Rule of Civil Procedure 60(b).

### "Withdrawal" of Counsel

■ Initially, we must address what is a fundamental and underlying misapprehension. Plaintiff contends that the district judge granted Mr. Zuganelis leave to withdraw as his counsel and that such action by the court constituted an abuse of discretion. The fact, however, is that Mr. Zuganelis never directed any "request" to the district court for leave to withdraw as plaintiff's counsel of record. On August 5, 1988, the following colloquy took place between plaintiff's counsel and Judge Conlon.

MR. ZUGANELIS: Good morning, your Honor.

THE COURT: Good morning.

MR. ZUGANELIS: George Zuganelis, Z–U–G–A–N–E–L–I–S, on behalf of the plaintiff. **And this is the last time I will be here on behalf the plaintiff, your Honor.**

THE COURT: Yes.

MS. ZOGAS: Good morning, your Honor. Sharon Zogas, Assistant Corporation Counsel, representing the defendant officer.

THE COURT: Good morning.

I am afraid I do know the status of this case. On April 29th I entered an order at a status hearing. The pretrial order was to be filed, let me see, at a pretrial conference on July 19th. That pretrial conference had to be canceled because no pretrial order was prepared.

On July 19th, we entered an order giving you a little more than two weeks to prepare the pretrial order.

The pretrial order is due today, and as I understand it you don't have a pretrial order.

MR. ZUGANELIS: **I have been fired by my client, your Honor, and I told my client I would come in and ask for an extension of time so his new lawyer could prepare the pretrial order.**

THE COURT: Is your client here today?

MR. ZUGANELIS: No, he is not, your Honor.

THE COURT: Well, I have no alternative under the circumstances, because you have not—and apparently have not been able to because of lack of client cooperation, I don't know—but I am going to dismiss the case for want of prosecution.

I'll tell you, I will entertain a motion to reinstate, but only if within the next two weeks the plaintiff produces the pretrial order and is ready for trial. This is not factually complex case, and it shouldn't be a big burden to prepare.

(Transcript of hearing on August 5, 1988) (emphasis supplied).

This colloquy discloses neither a formal nor informal request for leave to withdraw by Mr. Zuganelis. There was merely a unilateral declaration that "this is the last time I will be here on behalf of the plaintiff" and later the statement that "I have been fired by my client." As both parties now acknowledge on appeal, Mr. Zuganelis completely ignored the requirements of the local rules of the Northern District of Illinois which provide:

Once an attorney has filed an appearance ... he/she is the attorney of record for the party represented for all purposes incident to the proceeding in which the appearance was filed. **The attorney of record may not withdraw ... without first obtaining leave of court.**

N.D.Ill. Local Rule 3.15 (emphasis supplied).[1] Mr. Zuganelis sought to portray his act of disengagement as a "fait accompli."[2] It was not. At no time does the

---

1. This rule is in accord with 28 U.S.C. § 1654.

2. Apparently the "fait accompli" was to apply not only to the court but also to his client. Mr.

Daniels flatly denies that he discharged Mr. Zuganelis or that he was given any advance warning that Mr. Zuganelis intended to terminate his representation.

record indicate that Judge Conlon granted Mr. Zuganelis leave to withdraw as plaintiff's attorney of record. Mr. Zuganelis may have presumed (as does the plaintiff) that he was no longer attorney of record, but such was not the case. Nor is there support for plaintiff's claim that leave to withdraw was "informally" granted. As the balance of the record of that August 5th hearing shows:

> MR. ZUGANELIS: I understand. My problem, Judge, as I explained before, is I have been busy preparing and now am actually in trial before Judge Rovner that will last approximately six weeks.
>
> THE COURT: But we are talking about last April when this order was entered.
>
> MR. ZUGANELIS: Yes, I understand that.
>
> THE COURT: And three weeks ago when you should have been ready for a pretrial conference. And I wasn't even given any advance notice, my clerk wasn't given any notice that you weren't prepared for the pretrial conference. We were going to set the matter for trial. I have time to try the case this month. And I had anticipated doing that.
>
> Now, **if your client or your former client, or whatever the status is at this point,** wishes to proceed with this case, it means getting that pretrial order in and standing ready for trial within the next several weeks. I don't mean trial within the next several weeks, but I mean coming in on an appropriate motion.
>
> MR. ZUGANELIS: Yes. I will inform him today by telephone and send him a letter as well.
>
> THE COURT: All right. Thank you.
>
> MS. ZOGAS: Thank you, Judge.
>
> MR. ZUGANELIS: Thank you.
>
> (Which were all the proceedings heard this date.)

(Transcript of Hearing on Aug. 5, 1988) (emphasis supplied). The district judge acknowledged the uncertainty concerning the relationship between Mr. Zuganelis and the plaintiff, describing Mr. Daniels as "your client or former client, or whatever the status is at this point." But, at no time did the court entertain—much less grant—a request by plaintiff's counsel to withdraw representation.

The unmistakable fact is that the court was never presented with a motion to withdraw, and thus none could be granted. This is not a situation of form over substance. While Mr. Zuganelis may have felt that he had escaped the burden of his duty to represent the plaintiff, the court did not indicate that he was free of those responsibilities. The district judge did not waive the requirements of Local Rule 3.15. Nor was leave to withdraw given by the court. The preemptive attempt by Mr. Zuganelis to remove himself as counsel for plaintiff had no legal effect. There can be no abuse of discretion on the part of the court for an act which did not take place.

### Dismissal for Want of Prosecution

■ We next examine the question of the propriety of the dismissal of this case for want of prosecution. District courts have inherent authority to dismiss a case *sua sponte* for a plaintiff's failure to prosecute. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). A dismissal for lack of prosecution is appropriate when there is "a clear record of delay or contumacious behavior." *3 Penny Theater Corp. v. Plitt Theaters, Inc.*, 812 F.2d 337, 339 (7th Cir.1987) (quoting *Zaddack v. A.B. Dick Co.*, 773 F.2d 147, 150 (7th Cir.1985) and *Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir.1983)). The standard of review for a dismissal for want of prosecution is abuse of discretion. *Link*, 370 U.S. at 633, 82 S.Ct. at 1390; *Pyramid Energy, Ltd. v. Heyl & Patterson*, 869 F.2d 1058, 1061 (7th Cir.1989).[3] In reviewing dismissals for want of prosecution, we have stated that we will not set aside a trial court's discretionary order unless it is clear that no reasonable person could concur in the trial court's assessment of the issue under consideration. *3 Penny Theater*, 812 F.2d at 339 (citations omitted).

---

**3.** Although the dismissal of this case was made *sua sponte* under the inherent authority of the district judge, much of the rationale embodied in Fed.R.Civ.P. 41(b) applies.

In order to determine whether the trial court abused its discretion, the reviewing court must examine the procedural history of the case and the situation at the time of the dismissal. *Pyramid Energy*, 869 F.2d at 1061.

In support of his claim that dismissal was improper, plaintiff asserts that there was no evidence of lack of prosecutive intent; that he was not personally responsible for the delays; the court failed to consider lesser sanctions; the relatively young age of the case; and that the defendant was not prejudiced by the delays. Given the abuse of discretion standard with which we review an involuntary dismissal, none of these claims lead us to conclude that the dismissal of Daniels' case was improper.

An examination of the procedural history and the situation at the time of the dismissal discloses a sufficient record of dilatory conduct on the part of the plaintiff to warrant dismissal. A distinct lack of prosecutive intent dates back to the inception of the case.

On January 27, 1987, Daniels filed a complaint against defendant Bernard J. Brennan individually and in his capacity as a Chicago police officer. The complaint alleged that his arrest and the events surrounding it violated his constitutional rights under 42 U.S.C. §§ 1983, 1985 and 1988. The plaintiff, however, failed to serve process on Brennan until sometime in June of 1987, almost five months after the complaint was filed.[4] Once service had been perfected, plaintiff's counsel failed to appear at the next scheduled hearing on July 9, 1987. Counsel's absence occurred without notice or any request to reschedule the hearing. In response to the failure to appear, an explicit warning was issued by Judge James B. Moran indicating that if plaintiff's counsel did not appear at the next scheduled hearing on July 16, 1987, the case would be dismissed for want of prosecution. Mr. Zuganelis heeded the warning and appeared on behalf of the plaintiff, but several months later he again failed to appear for a status conference. This absence occurred on October 26, 1987. Judge Moran entered an order directing Mr. Zuganelis to appear on November 9, 1987, or the matter would be referred to the Executive Committee.[5] Plaintiff's counsel appeared at the November 9th hearing.

Judge Suzanne B. Conlon assumed the district court bench on February 22, 1988, and seven days later was assigned a full docket which included this case from Judge Moran—a case which already reflected a pattern of delay and dilatory conduct on the part of the plaintiff's counsel.

In an effort to gain control over her newly acquired docket, Judge Conlon issued an order directed to all litigants indicating that she had recently been assigned a large number of pending cases and requested their help through the filing of joint status reports.

The joint status report filed by the parties in this case disclosed that no discovery had taken place due to settlement negotiations and that a settlement offer had been rejected by the plaintiff despite his attorney's recommendation that he accept it. Judge Conlon then ordered the parties to submit a proposed joint discovery plan by April 29, 1988. The next status call was set for the same date. Defendant's joint

---

4. The docket entries disclose that a summons was first issued by the court when the complaint was filed in January of 1987. However, no return of that summons was ever filed and no appearance was entered on the defendant's behalf. The docket indicates that a second summons was issued on June 8, 1987. On June 24, 1987, Brennan's counsel entered an appearance.

   As Brennan points out, this record of late service must be construed against Daniels since any ambiguity was caused by his failure to file proof of service with the court as required by Federal Rule of Civil Procedure 4(g). The dis-trict court could have dismissed the case without prejudice pursuant to Rule 4(j) for Daniels' failure to effectuate service within the required 120 days.

5. The Northern District of Illinois has adopted local rules defining the grounds for disciplinary action against attorneys. The disciplinary powers of the court are vested in the Executive Committee which is composed of the Chief Judge, four judges of the court, acting Chief Judge and the Clerk of the Court. N.D.Ill. Local Rules 1.02(c) and 3.51.

discovery proposal was filed on April 28, 1988.

At the status hearing the following day, defense counsel informed the court that plaintiff's counsel, Mr. Zuganelis, had advised the corporation counsel's office by telephone that he would be unable to attend the court proceeding on April 29th due to illness, but that he would file a proposed discovery schedule on the day of the status call. The trial court entered an order directing the parties to submit a final pretrial order at a pretrial conference scheduled for July 19, 1988. Notice of this order was mailed to the parties. Later that day, plaintiff's counsel filed his proposed discovery schedule.

At the July 19th pretrial conference held in chambers, no final pretrial order was presented. Consequently, the court specifically and directly ordered the parties to submit the final pretrial order in open court on August 5, 1988.

At the August 5th hearing, as previously noted, Mr. Zuganelis declared that he would no longer be representing the plaintiff. Judge Conlon raised the issue of plaintiff's failure to have the pretrial order ready in a case which was not complex. In explaining his lack of preparation, Mr. Zuganelis stated that he was already busy in a trial that would take six weeks to complete. Judge Conlon then focused on the fact that not only was he not prepared for the pretrial conference but also that he had given no notice to the court of his purported conflict.

The district judge was faced with having been assigned a full docket of cases upon her assumption of the bench. Moreover, the record in this case indicates that prior to the reassignment to Judge Conlon the plaintiff had been warned of a dismissal for want of prosecution and plaintiff's counsel had been threatened with potential disciplinary action. Thereafter, upon Judge Conlon's assumption of jurisdiction, further dilatory acts of the plaintiff occurred culminating with the pretrial conference at which Mr. Zuganelis indicated that he was not prepared to go forward because of other commitments and his declaration that

he had been fired by the plaintiff. Not surprisingly, given the lack of preparation, delay and dilatory conduct, the district court dismissed the case *sua sponte* for want of prosecution. However, Judge Conlon stated that she would entertain a motion to reinstate within the next two weeks if the plaintiff produced the pretrial order and was ready for trial.

As in *Pyramid Energy*, we believe that under these facts a "reasonable person could concur in the trial court's decision based on this case's procedural history and status." 869 F.2d at 1061. Judge Conlon's action in dismissing the case and permitting reinstatement was within the realm of reasonableness. The decision of the district court was, of course, not the only action which could have been taken. However, our job is not to re-exercise the trial judge's discretion but rather to determine if that exercise of discretion was unreasonable.

The power of federal judges to dismiss for want of prosecution is based in part on the necessity to prevent "undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Link*, 370 U.S. at 629, 82 S.Ct. at 1388. As the Supreme Court has indicated, district courts have the power, "acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Id.* at 630, 82 S.Ct. at 1388–89. As we have stated in affirming a dismissal for want of prosecution, "[t]rial judges have a responsibility to litigants to keep their court calendars as current as humanly possible." *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 608 (7th Cir.1986).

A trial judge's efforts to move cases along to trial, as was Judge Conlon's intent in this case, is clearly in keeping with her responsibilities of docket control. Given the conduct of plaintiff's counsel, Judge Conlon's decision to dismiss with a right to reinstate was not an abuse of discretion.

The plaintiff now seeks to avoid the unfortunate consequences arguing that dismissal was improper because he was not

responsible for the delays and dilatory conduct caused by his attorney. As the Supreme Court has explained:

> There is certainly no merit to the contention that dismissal of [a plaintiff's] claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. [Plaintiff] voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

*Link,* 370 U.S. at 633–34, 82 S.Ct. at 1390 (citation omitted); *see also Pyramid Energy,* 869 F.2d at 1061–62; *Tolliver v. Northrop,* 786 F.2d 316 (7th Cir.1986). In other words, "a party who chooses his counsel freely should be bound by his counsel's actions." *Deppe v. Tripp,* 863 F.2d 1356, 1360 (7th Cir.1988) (citations omitted). The plaintiff's efforts to avoid the consequences of his attorney's conduct is not unusual. We have previously addressed such problems in a number of cases. In *Kagan,* we stated that the ruling case law fails to support the assertion that the total responsibility for a plaintiff's predicament caused by a dismissal for want of prosecution lies with his attorney. 795 F.2d at 611. We held in *Pyramid Energy* that a client who independently chooses his counsel is bound by that counsel's acts, "otherwise, the court's power to control its docket and compel attorneys to proceed within the time frame set by the court and not their own would erode and eventually disappear." 869 F.2d at 1061–62.

Other circuits have also addressed this issue. In *Pryor v. United States Postal Service,* 769 F.2d 281, 288–89 (5th Cir. 1985), the Fifth Circuit addressed and rejected the argument raised by the plaintiff in this case. The court stated:

> Appellant on brief urges that it is unfair that he will be deprived of his day in court solely because of the mistakes and omissions of an indifferent counsel. But it has long been held, particularly in civil litigation, that the mistakes of counsel, who is the legal agent of his client, are chargeable to the client, (citation omitted), no matter how 'unfair' this on occasion may seem....
>
> Were this court to make an exception to finality of judgment each time a hardship was visited upon the unfortunate client of a negligent or inadvertent attorney, even though the result be disproportionate to the deficiency, courts would be unable to ever adequately redraw that line again, and meaningful finality of judgment would largely disappear.

The remedy for a client who suffers a dismissal because of the negligence of his attorney is a malpractice action; the remedy is not in avoiding the consequences of the conduct of a freely selected agent. *Link,* 370 U.S. at 633–34 n. 10, 82 S.Ct. at 1390 n. 10; *Kagan,* 795 F.2d at 612 (citing *Pryor,* 769 F.2d at 288–89).

While no lesser sanctions had been previously imposed for plaintiff's counsel's failures to appear and comply with court deadlines, plaintiff's counsel had received at least two warnings prior to dismissal. The imposition of lesser sanctions is not a prerequisite to dismissal. *Patterson v. Coca-Cola Bottling Co.,* 852 F.2d 280, 284 (7th Cir.1988). In *Patterson,* we rejected a similar argument and explicitly refused to require trial courts to impose lesser sanctions before dismissing a case. "The choice of an appropriate ... sanction is primarily the responsibility of the district court...." *Id.* at 283. Likewise, in *Pyramid Energy,* we stated that "[a] trial court is entitled to say, under proper circumstances, that enough is enough, (citation omitted), and less severe sanctions than dismissal need not be imposed where the record of dilatory conduct is clear." 869 F.2d at 1062.

The plaintiff's final arguments that the dismissal was improper because Brennan did not show that he was prejudiced from the delay and because of the case's young age are also meritless. A trial court's authority to dismiss a case is not dependent on a showing of prejudice by the defen-

dant. Although a dismissal with prejudice serves to protect defendants, it also serves to "aid courts in keeping administrative control over their own dockets and to deter other litigants from engaging in similar dilatory behavior." *Zaddack,* 773 F.2d at 150 (citations omitted). In addition, it is of little consequence that Daniels' lawsuit was relatively younger than most cases in which we have upheld dismissal under Rule 41(b). As we stated in *3 Penny Theater Corp.,* "[t]here have been many cases where we have held that dismissal was not an abuse of discretion, notwithstanding the fact that the actions were relatively young." 812 F.2d at 340 (quoting *Schilling v. Walworth County Park & Planning Comm'n,* 805 F.2d 272, 277 (7th Cir. 1986)).

### Denial of Relief Under Rule 60(b)

■ Lastly, we find no abuse of discretion in the district court's refusal to reconsider the dismissal and to reinstate the case under Fed.R.Civ.P. 60(b).[6] Plaintiff's *"pro se"* motion for relief from the judgment of dismissal filed on September 9th was denied by an order entered on September 12th.

In this motion for postjudgment relief (prepared with unnamed professional legal assistance), the plaintiff indicated that he no longer objected to what he characterized as the court's authorized withdrawal of his prior counsel. The plaintiff also asserted that due to an apparent misunderstanding, his prior counsel erroneously represented to the court that attorney John L. Straithorp had agreed to enter the case on plaintiff's behalf,[7] but that, in fact, he had been unable to obtain substitute counsel. The plaintiff further stated his belief that he

could secure substitute counsel, but that he had been unable to do so because of the "short extension of time to file the pretrial order." Plaintiff concluded by requesting reinstatement and asking for an additional 45 days within which to obtain counsel.

In her judgment of dismissal orally announced from the bench, Judge Conlon set forth specific conditions upon which Daniels could seek reinstatement. The conditions were that the case would be reinstated, "if within the next two weeks the plaintiff produces the pretrial order and is ready for trial." This was consistent with the rule that a district court may impose reasonable conditions for setting aside a dismissal for want of prosecution. *See Zaddack,* 773 F.2d at 150.

Under the circumstances these do not appear to be unduly burdensome conditions. The case was not complex and discovery had been completed. All plaintiff needed to do for reinstatement was to submit a proposed pretrial order within the two weeks allowed for that submission. It is apparent that the filing of the proposed pretrial order would have signaled plaintiff's readiness for trial, but not an immediate trial. As Judge Conlon stated to Mr. Zuganelis during the August 5th hearing, reinstatement required "getting that pretrial order in and standing ready for trial within the next several weeks. I don't mean trial within the next several weeks, but I mean coming in on an appropriate motion." In short, the submission of a simple pretrial order would have saved the case. A trial would have followed no sooner than several weeks thereafter. These were not unreasonable reinstatement conditions.

---

6. On August 18th, within 10 days of the August 8th entry of the judgment of dismissal, plaintiff filed a *pro se* pleading entitled "Motion to Reinstate Cause and to Deny the Excusing of Plaintiff's Counsel." We consider this motion as one made under Rule 59(e). All substantive motions served within 10 days of the entry of a judgment will be treated as based on Rule 59, and therefore as tolling the time for appeal. *Charles v. Daley,* 799 F.2d 343, 347 (7th Cir. 1986). This motion was denied by an order entered August 26th and plaintiff apparently seeks to appeal also from the denial of this Rule

59(e) motion. An appeal from a denial of a Rule 59(e) motion is treated as an appeal from the judgment itself. *Petru v. City of Berwyn,* 872 F.2d 1359, 1361–62 (7th Cir.1989). Thus, we have not separately discussed matters plaintiff relates to the denial of the August 18th motion.

7. The record in this case indicates no representation was ever made to the court by Mr. Zuganelis concerning Mr. Straithorp acting as substitute counsel.

Notwithstanding the apparent legal assistance he had received in preparing his Rule 60(b) motion, it is painfully clear that more than one month after the dismissal which carried the simple key to reinstatement, no proposed pretrial order was ever tendered. Instead, the second motion for relief was submitted with the request for 45 additional days to obtain substitute counsel. As we stated in *Tolliver*, "[w]e think it a sound practice to insist, as a condition of reinstating a case under Rule 60(b), that the defaulting party cure all defaults still within his power to cure." 786 F.2d at 319 (citation omitted). We concluded in *Tolliver* by stating, "[a] judge need not meekly reinstate a case in which a curable default continues." *Id.*

Because of the interest in finality, we have a restricted scope in our review of the denial of Rule 60(b) motions and "[t]he original decision to dismiss a case is protected by highly deferential review." *Tolliver*, 786 F.2d at 318. Relief under Rule 60(b) is warranted "only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust." *3 Penny Theater Corp.*, 812 F.2d at 340 (quoting *Margoles v. Johns*, 798 F.2d 1069, 1073 (7th Cir.1986), *cert. denied*, 482 U.S. 905, 107 S.Ct. 2482, 96 L.Ed.2d 374, *reh'g denied*, 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 820 (1987)). Further, an abuse of discretion under Rule 60(b) is shown only in those cases in which "no reasonable person could agree with the district court's decision." In other words, the district court's Rule 60(b) decision has been described as "discretion piled on discretion." *Tolliver*, 786 F.2d at 318–19. Under the strong presumption in favor of a district judge's decision under Rule 60(b) and the highly deferential standard of review which must be applied, we cannot conclude that the denial of plaintiff's postjudgment motion for relief constituted an abuse of discretion.

The district court's judgment of dismissal for want of prosecution is AFFIRMED.