T.C. Memo. 2004-198

UNITED STATES TAX COURT

BRENDT L. SMITH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11191-01.                    Filed August 31, 2004.

Brendt L. Smith, pro se.

<u>Stewart Todd Hittinger</u>, for respondent.

MEMORANDUM OPINION

GALE, <u>Judge</u>:  On June 1, 2001, respondent issued a notice of
deficiency with respect to petitioner's Federal income taxes for
1995 and 1996 determining deficiencies of $12,677 and $11,683,
respectively, and fraud penalties under section 6663(a)[1] of

---

[1] Unless otherwise noted, all section references are to the
Internal Revenue Code in effect during the taxable years at
                                        (continued...)

$9,508 and $8,762, respectively. We granted respondent's motion to dismiss for lack of prosecution as to the deficiencies after petitioner failed to appear at trial or respond to our order requesting a response to respondent's motion to dismiss. The issue for decision is whether petitioner is liable for fraud penalties under section 6663(a) for the years at issue. We also consider whether we should impose a penalty under section 6673(a)(1).

On August 31, 2001, petitioner filed an imperfect petition with this Court and requested a copy of the Court's Rules for filing a formal petition.[2] Over 5 months later, after two extensions of time to file, petitioner filed an amended petition on February 19, 2002, in conformance with this Court's Rules.

On November 1, 2002, petitioner was served with a notice setting his case for trial on April 7, 2003, and stating: "YOUR FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST YOU." Included in the notice was the Court's standing pretrial order, which states: "<u>Continuances will be granted only in exceptional circumstances</u>." The notice further called the parties' attention to the Court's requirements for

---

[1](...continued)
issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] At the time of the filing, petitioner resided in Winona Lake, Indiana.

stipulation and advised that the parties should establish contact for this purpose.

In an effort to prepare this case for trial, respondent made several attempts through letters and telephone calls to arrange to meet with petitioner to prepare a stipulation of facts and otherwise define the issues. Petitioner spoke to respondent's counsel once before trial but did not exchange documents or endeavor to prepare a stipulation of facts. On March 6, 2003, petitioner requested a continuance by means of a letter sent to the Clerk of the Court but at the address of the Federal Building and Courthouse in Indianapolis, Indiana. In the letter petitioner made reference to his trial date of April 7, 2003, and advised:

> At this time I am asking for a continuance due to a family medical problem (Pneumonia). My mother has been sick for awhile and family physician thought it would [sic] a good thing for her to visit relatives in Florida. She has been their [sic] for about two months and has been doing well. I will be flying down to drive her home and will not be able to appear.

On March 12, 2003, petitioner's letter was returned to him by the Clerk of the U.S. District Court for the Southern District of Indiana, who indicated that petitioner had sent his correspondence to the wrong court. On March 31, 2003, this Court received a letter dated March 22, 2003, from petitioner in which

he requested a continuance and attached a copy of his previous letter.  We filed this submission as a motion to continue and set a hearing to consider it on April 7, 2003.

Petitioner did not appear for the hearing on his motion to continue or the scheduled trial session.  Respondent filed a motion to dismiss for lack of prosecution and requested a trial to present testimony and other evidence in support of his determination of fraud.  We denied petitioner's motion to continue, held a trial to receive respondent's evidence, and ordered petitioner to file a response to respondent's motion to dismiss within 30 days.

Petitioner did not file a response to respondent's motion to dismiss.  By order dated May 19, 2003, we granted respondent's motion to dismiss for lack of prosecution as to the deficiencies[3] and scheduled the filing of seriatim briefs on the issue of fraud.  On the day before his brief was due, petitioner mailed a letter to the Court stating:  "I received a letter denying my

---

[3] In the amended petition, petitioner averred that the periods of limitation for assessing tax for his 1995 and 1996 taxable years had expired before the June 1, 2001, issuance of the notice of deficiency for those years.  However, the evidence adduced by respondent at trial includes Forms 872, Consent to Extend the Time to Assess Tax, executed by petitioner, that extended the period for assessment for 1995 and 1996 until June 30, 2001.

request [for a continuance] the day of trial", denying the fraud allegations, and requesting a trial.[4]

Petitioner's Failure To Appear

We decline to grant petitioner's request for additional trial proceedings in this case because, on the basis of a review of the entire record, we are persuaded that he had no adequate justification for failing to appear at the initial trial and, further, that he has engaged in a deliberate effort to delay a resolution of this case.

After receiving the notice setting this case for trial, petitioner disregarded numerous attempts by respondent to discuss stipulations and otherwise prepare the case for trial. Instead, 32 days before the scheduled trial date, petitioner sent a letter, albeit to the wrong address, requesting a continuance. On the basis of petitioner's subsequent statements,[5] we are persuaded that petitioner timed the submission of his request as late as possible without triggering the more stringent requirements of Rule 133 for continuances that are sought within

---

[4] Petitioner's submission was filed by the Court as his answering brief.

[5] In his response mailed the day before his answering brief was due, petitioner complained that his request for a continuance had been denied notwithstanding that his request had been made "30 days prior to trial".

the 30-day period preceding trial.[6]  Moreover, petitioner's original request for a continuance demonstrates that there were no family or medical exigencies that precluded his appearance at the trial scheduled for April 7, 2003.  In his request, petitioner advised that his mother had been visiting relatives in Florida for 2 months on account of her doctor's advice regarding pneumonia.  According to petitioner, she was "doing well", but he needed to fly to Florida to drive her back to Indiana at the time his trial was scheduled.  We were unpersuaded that these circumstances required petitioner to miss a trial date scheduled 5 months in advance.  Accordingly, we set the matter for hearing, but petitioner failed to appear.  Having been advised in the notice setting the case for trial that his failure to appear might result in dismissal of the case and entry of decision against him, petitioner voluntarily forfeited his right to present evidence at a trial by failing to appear without having been excused.

Moreover, petitioner's failure to cooperate in preparing the case for trial and his 11th-hour request for a continuance conform with a pattern of dilatoriness in this proceeding.  His petition was not perfected until more than 5 months after its

---

[6] Rule 133 provides that a motion for continuance that is filed 30 days or less before a scheduled trial "ordinarily will be deemed dilatory and will be denied unless the ground therefor arose during * * * [the 30-day] period or there was good reason for not making the motion sooner."

initial filing.  After petitioner failed to appear for trial and respondent filed a motion to dismiss for lack of prosecution, we allowed petitioner 30 days after the scheduled trial date to respond to respondent's motion.  Petitioner failed to do so.[7]  Instead, petitioner waited until after we granted respondent's motion to dismiss with respect to the deficiencies and, as with his request for continuance, on the day before his deadline for filing a brief regarding the issue of fraud, he submitted a letter denying fraud and requesting that a trial date be set.  In these circumstances, we conclude that petitioner's belated request for a trial is little more than a stalling tactic, designed to delay a disposition of this case.

Rule 149(a) provides that, where there is an unexcused absence of a party when a case is called for trial, the case "may be dismissed for failure properly to prosecute, or the trial may proceed and the case be regarded as submitted on the part of the absent party or parties."  Dismissal of a case for failure to properly prosecute is a sanction that rests with the discretion of the Court.  See Rule 123(b); Harper v. Commissioner, 99 T.C. 533, 540 (1992); Levy v. Commissioner, 87 T.C. 794, 803 (1986); see also Daniels v. Brennan, 887 F.2d 783, 785-789 (7th Cir.

---

[7] We note that a response to the motion to dismiss would have been an opportunity for petitioner to provide any further explanation that he wished to make of his failure to appear for trial.  However, petitioner ignored our order to respond.

1989) (discussing standard for dismissal under rule 41(b) of the Federal Rules of Civil Procedure, the model for Rule 123(b)). Accordingly, for the reasons discussed above, we granted respondent's motion to dismiss for lack of prosecution and sustained respondent's determination as to the deficiencies. With respect to the fraud penalties, we exercised our discretion under Rule 149(a) to conduct a trial to afford respondent the opportunity to present evidence to meet his burden of proof. See Brooks v. Commissioner, 82 T.C. 413, 426 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985); Ritchie v. Commissioner, 72 T.C. 126, 128 (1979).

Fraud Penalties

In the case of a fraud penalty, where the taxpayer is absent from trial without excuse, the Commissioner may meet his burden of proving fraud by means of pleadings which set forth sufficient facts to support a finding of fraud. Smith v. Commissioner, 91 T.C. 1049, 1058-1059 (1988), affd. 926 F.2d 1470 (6th Cir. 1991). Respondent's pleadings in his answer set forth the following facts, which are deemed admitted.

During 1995 and 1996, petitioner owned and operated a construction business, an antiques business, and commercial rental property.

Respondent used the source and application of funds method to reconstruct petitioner's income.[8]  Respondent's analysis showed that the excess of petitioner's application of funds over his known sources of income in 1995 was $64,327, as compared to reported gross receipts of $12,652.  Respondent's analysis showed that the excess of petitioner's application of funds over his known sources of income in 1996 was $40,562, as compared to reported gross receipts of $37,311.

In addition, respondent adduced evidence at trial that establishes the following.

An agent of respondent conducted an examination of petitioner's 1995 and 1996 taxable years.  At the time of the examination, petitioner had conducted a construction business for at least 9 years, which served as his primary source of income.

While petitioner was able to substantiate some expenses of his income-producing activities in 1995 and 1996, he failed to maintain or submit for examination by respondent books and

---

[8] The source and application of funds method of proof has been accepted by this Court as an appropriate method for the Commissioner to reconstruct the income of a taxpayer whose records are inadequate.  See, e.g., DeVenney v. Commissioner, 85 T.C. 927 (1985).  The Court of Appeals for the Seventh Circuit, to which an appeal in this case lies barring stipulation to the contrary, has likewise upheld the cash expenditures method, a reconstruction method very similar to the source and application of funds method.  See, e.g., United States v. Marrinson, 832 F.2d 1465, 1469-1470 (7th Cir. 1987); cf. Hall v. Commissioner, T.C. Memo. 1996-27 (discussing distinction between cash expenditures and source and application of funds methods).

records to account for the income from those activities in those years.

Petitioner admitted receiving $37,800 from Johnson Controls, Inc., in 1995 as well as a 1995 Form 1099-MISC, Miscellaneous Income, reporting that amount from that source. Petitioner reported only $8,803 of gross receipts in his Schedules C, Profit or Loss From Business, for his construction business and $2,651 for his antiques business in 1995. Petitioner offered three different explanations to respondent's examiner concerning why he did not report the $37,800 shown on the foregoing Form 1099-MISC: (i) That he had not received the Form 1099-MISC in time to include the amount thereon in his 1995 return;[9] (ii) that the amounts reported on the 1995 Schedule C for his construction business were net amounts; i.e., receipts less expenses; and (iii) that when he thought about his truck payment, he "decided to keep it."

In response to the examining agent's inquiries seeking to identify nontaxable sources of income during 1995 and 1996, petitioner claimed he received a $10,000 gift from his mother but did not substantiate it. Petitioner also claimed that during 1995 and 1996 he collected rent receipts of approximately $11,700 annually on his mother's behalf from two rental properties that

---

[9] We note in this regard that petitioner's 1995 return was filed on Oct. 21, 1996.

she owned and deposited them into his checking account before remitting them to his mother.  When the examining agent was unable to trace in petitioner's bank records the rent payments allegedly collected for and paid over to his mother, petitioner then explained that the remittances to his mother were not traceable because he occasionally used the rent receipts for repairs to the properties and occasionally kept the payments when he was short of cash, advising his mother that the tenants were late in paying and then remitting the payments to her at a later time.

To establish fraud, the Commissioner must show by clear and convincing evidence that there is an underpayment and that a portion of the underpayment is attributable to fraud.  See sec. 7454(a); Rule 142(b); Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989).  If the Commissioner establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except to the extent the taxpayer establishes otherwise.  See sec. 6663(b); Marretta v. Commissioner, T.C. Memo. 2004-128; Peyton v. Commissioner, T.C. Memo. 2003-146.

"Fraud is established by proving that the taxpayer intended to evade tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax." Recklitis v. Commissioner, 91 T.C. 874, 909 (1988).  The

existence of fraud is a question of fact established by consideration of the entire record. Petzoldt v. Commissioner, supra at 699; Estate of Pittard v. Commissioner, 69 T.C. 391, 400 (1977). Direct proof of fraud is seldom available; therefore, fraud may be proved by circumstantial evidence and reasonable inferences from the facts. Petzoldt v. Commissioner, supra; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The courts have recognized numerous indicia or "badges" of fraud, including the following: (1) A pattern of underreporting income; (2) maintaining inadequate records; (3) giving implausible or inconsistent explanations of behavior; and (4) establishing a pattern of inaction and delay during the pretrial and trial proceedings. Spies v. United States, 317 U.S. 492, 499 (1943); Conti v. Commissioner, 39 F.3d 658, 662 (6th Cir. 1994), affg. and remanding on other grounds T.C. Memo. 1992-616; Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Rice v. Commissioner, T.C. Memo. 2003-208; McCue v. Commissioner, T.C. Memo. 1983-580. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia constitutes persuasive circumstantial evidence of fraud. Petzoldt v. Commissioner, supra at 700.

Respondent reconstructed petitioner's income in the years at issue by use of the source and application of funds method. Respondent's analysis indicates that petitioner substantially

underreported income in both years; namely, $64,327 in 1995 and $40,562 in 1996.  Accordingly, respondent has met his burden of showing by clear and convincing evidence that petitioner had underpayments of tax in 1995 and 1996.

On the question of whether these underpayments are attributable to fraud, respondent has demonstrated several badges of fraud, as follows.  Petitioner failed to report income in both years, indicating a pattern of underreporting.  The unreported amounts were substantial in relation to petitioner's reported gross receipts; namely, $64,327 of unreported income versus reported gross receipts of $12,652 in 1995, and $40,562 of unreported income versus reported gross receipts of $37,311 in 1996.  The magnitude of the unreported amounts makes it virtually impossible that they could have been due to mere mistake or inadvertence.

Petitioner's records were clearly inadequate.  While he was able to substantiate certain expenses, petitioner did not maintain or produce regular books or records from which the income from his Schedule C businesses could be ascertained.

Petitioner gave numerous implausible explanations for his failure to report income.  He offered three inconsistent explanations for his failure to report the $37,800 in income that he received from Johnson Controls, Inc., in 1995.  Moreover, his claim that he did not receive the Form 1099-MISC from Johnson

Controls, Inc., in 1996 in time to include the amount on his return is implausible, given that the return was not filed until October 21, 1996, and Johnson Controls, Inc., had a statutory obligation to mail the form to him by the end of the preceding January.[10]

Petitioner's attempts to identify nontaxable sources of income are similarly implausible. His claim that his mother gave him $10,000 was not substantiated. His claim that he deposited rent receipts belonging to his mother into his own checking account, and then paid over the receipts to his mother, was later qualified when the examining agent was unable to trace these amounts through his account. In the qualified version, petitioner claimed that the rent receipts were sometimes expended on repairs and sometimes kept by him for a period of time before being repaid to his mother. Even if the claims regarding the rent receipts were accepted, they would at most account for $11,700 of nontaxable source income annually, far less than the amounts petitioner failed to report in each year.

In reaching our conclusion that petitioner's various attempts to explain to the examining agent his failure to report income constitute evidence of fraud, we also take note of the

[10] Information returns must be delivered to the person with respect to whom the information is required by Jan. 31 of the year following the calendar year in which payment of the reported income is made. See sec. 6041(d).

fact that, when faced with the prospect of putting these various explanations through the crucible of sworn testimony and cross-examination, petitioner opted to avoid trial.

Finally, petitioner's pattern of inaction and delay in this proceeding is evidence of fraud. He took 5 months to perfect his petition. Notwithstanding multiple attempts by respondent's counsel, petitioner made no effort to complete the stipulation process or otherwise prepare the case for trial. He waited until just before the 30-day window preceding trial to seek a continuance, failed to appear for trial, ignored our order to respond to respondent's motion to dismiss, and then, on the last day for filing a brief regarding the fraud issue, insisted on a trial. Taken together, the actions evince an effort to avoid any final reckoning on his tax liabilities and are evidence of fraud.

Accordingly, on the basis of the entire record, we find that respondent has shown clearly and convincingly that petitioner's underpayments of tax in 1995 and 1996 were due to fraud. The entirety of petitioner's actions persuade us that he was aware that taxes were owed on the income that was not reported. As noted, the magnitude of the unreported amounts rebuts any realistic possibility that the omissions were due to inadvertence or error, as do petitioner's various inconsistent attempts to explain the discrepancies. Those explanations were an effort to conceal and mislead. Finally, petitioner has not shown that any

portion of the underpayment in either year was not attributable to fraud.  Therefore, we will sustain in full respondent's determinations of fraud for both years.

Section 6673 Penalty

We note that section 6673(a)(1) authorizes the Court to require a taxpayer who has instituted or maintained a proceeding primarily for delay, or whose position is frivolous or groundless, to pay a penalty to the United States.  See Williams v. Commissioner, 119 T.C. 276, 280-281 (2002); Bagby v. Commissioner, 102 T.C. 596, 614 (1994); Stamos v. Commissioner, 95 T.C. 624, 638 (1990), affd. without published opinion 956 F.2d 1168 (9th Cir. 1992).  The Court may consider the imposition of such a penalty sua sponte.  See, e.g., Jones v. Commissioner, T.C. Memo. 2003-131; Hawes v. Commissioner, T.C. Memo. 1999-152; Bierhaalder v. Commissioner, T.C. Memo. 1993-164, affd. without published opinion 16 F.3d 415 (10th Cir. 1994).

As our previous discussion indicates, petitioner's failure to engage in any meaningful pretrial preparation, his failure to appear for trial, and his other efforts to protract this proceeding are evidence that he instituted and maintained it primarily for delay.  Respondent has not sought a penalty under section 6673(a)(1), however, and we will not impose one in these circumstances.  Petitioner is nonetheless cautioned that should

he engage in similar actions in any future proceedings in this Court, penalties under section 6673 may be imposed.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.