GCIU EMPLOYER RETIREMENT FUND, formerly known as International Printing Pressmen and Assistant's Union of North America Employer Retirement Fund, Plaintiff–Appellant,

v.

CHICAGO TRIBUNE COMPANY, Defendant–Appellee.

No. 92–3712.

United States Court of Appeals, Seventh Circuit.

Argued May 6, 1993.

Decided Nov. 3, 1993.

Charles Orlove, David S. Allen (argued), Jacobs, Burns, Sugarman & Orlove, Chicago, IL, for plaintiff-appellant.

Alan L. Marx (argued), Joan D. Roy, E. Andrew Norwood, King & Ballow, Nashville, TN, for defendant-appellee.

Before CUDAHY, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Dismayed by plaintiff-appellant GCIU Employer Retirement Fund's perceived lack of intent to prosecute, the district court *sua sponte* dismissed with prejudice the Fund's suit against defendant-appellee Chicago Tribune Company. Because we conclude the district court abused its discretion by dismissing the Fund, we reverse and remand.

## I.

Chicago Tribune Company is an Illinois corporation engaged in the business of newspaper publishing. The Fund's trustees administer a pension plan for the Tribune's employees. Pursuant to both a "pension subscription agreement" and a succession of collective bargaining agreements with the Chicago Web Printing Pressmen's Union Number 7, the Tribune regularly contributed to the Fund on behalf of the Tribune's pressroom employees. In July 1985, the Tribune and the pressmen's union were unable to resolve their difference regarding their next collective bargaining agreement; dissatisfied, the pressmen struck. The Tribune responded by hiring permanent replacements.

Suspecting that the Tribune had ceased making the required pension contributions to the Fund, the pressmen's union exhorted the Fund to perform a payroll audit of the Tribune's books and records to insure the Tribune had in fact made the appropriate pension contributions for each union pressman and each replacement worker. The Tribune rebuffed the Fund's demand on four separate occasions. Finally, on October 15, 1986, the Fund's trustees sued the Tribune to compel an audit and to force the payment of any shortfalls the audit might reveal.[1]

The Tribune moved to dismiss the Fund's complaint on the basis that the most recent collective bargaining agreement with the pressmen's union had expired, thereby extinguishing its obligation to contribute to the Fund. The Fund responded to the motion to dismiss by relying upon the pension subscription agreement, which, it claimed, obligated the Tribune to contribute to the Fund at the same rate as had been required in the expired collective bargaining agreement. The Fund moved for summary judgment.

The district court referred the Tribune's motion to dismiss and the Fund's motion for summary judgment to Magistrate Judge Elaine Bucklo for a report. After concluding the pension subscription agreement obligated the Tribune to continue its contributions to the Fund, in June 1988 Magistrate Judge Bucklo recommended the former motion be denied and the latter granted. The district court agreed with Magistrate Judge Bucklo's recommendations and purported to enter judgment in the Fund's favor.

Upon hearing the news, the Tribune consented to an audit and also appealed the district court's judgment. The audit allegedly revealed a shortfall, and the Tribune's appeal was short-lived. In October 1989, this court dismissed the appeal for lack of appel-

late jurisdiction because the district court's judgment failed to set out specifically the relief to which the Fund was entitled; in effect, it was held no judgment had been entered.

Rather than return to the district court to insure that the judgment would be properly entered, the Fund left the matter hanging and instead chose to try to negotiate a settlement. In February 1990, the two sides tentatively agreed that the Tribune would contribute a specific amount to the Fund, subject to the preparation of an acceptable written instrument embodying the agreement. The Tribune submitted a proposed draft which, according to the Fund, was worded in a way that would have released the Tribune from any obligation to make contributions on behalf of the strikers. The Fund found the Tribune's language unsatisfactory because several months earlier an NLRB administrative law judge considering a parallel or similar unfair labor practices claim by the Tribune's pressmen had issued a "make whole" order in favor of the pressmen and against the Tribune; the Fund interpreted the order to include pension contributions, an interpretation which, if correct, would supposedly entitle the Fund to substantial additional contributions. The Fund redrafted the proposed agreement to its own liking but not to the Tribune's; in August 1990 the Tribune rejected the Fund's revisions.

In October 1990, the Tribune's attorneys again broached the possibility of settlement. Several conferences failed to resolve the respective parties' differences, and in August 1991, the parties reached an impasse. During the entire twenty-two month negotiation period, neither party had any contact with the district court whatsoever.

On August 15, 1991, the Tribune filed for summary judgment.[2] It took the position

---

1. The Fund initiated its action pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), and § 502 of the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multi–Employer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1132. Under § 502(a)(3) of ERISA, a "fiduciary" of a multiemployer fund has standing to commence a civil action to enforce the obligations the Act imposes upon employers. The

Fund's trustees are "fiduciaries" within the meaning of § 3(14)(A) and 402(c)(1) of ERISA.

2. Given the prior attempted entry of summary judgment in the Fund's favor, we agree with the district court's assessment that the Tribune's 1991 "motion for summary judgment" is more properly characterized as a motion to reconsider. Because the district court and the parties handled the situation as if the Tribune's motion (and

that a recently-signed collective bargaining agreement both superseded the pension subscription agreement and eliminated any requirements that it contribute additional amounts to the Fund. Shortly thereafter, the Fund filed its own motion for summary judgment. When the parties came before the district court on September 12, 1991, the district court learned for the first time of the ineffectiveness of its August 1988 grant of summary judgment in the Fund's favor. Although surprised that the case was still pending and disturbed that no one had bothered to keep it abreast of the suit's status in the interim, the district court offered to assist the parties in their negotiations, but was advised that further discussions were unlikely to resolve the controversy. The district court accepted the parties' proposed briefing schedule for the summary judgment cross-motions. This schedule was strictly followed in the following months.

On March 23, 1992, the district court ordered the parties to appear for a status conference the following week. On the day of the conference, the district court informed the parties that virtually the entire court file was missing and directed the parties to reconstruct the missing file, which they did immediately. The district court once again indicated its willingness to assist in settlement negotiations and ordered the parties to appear for another status conference the following month.

At the next status conference, the district court and the parties all agreed the motions for summary judgment had been pending long enough. The district court expressed its view that no further briefs were necessary and that "we should just rule and have it done." *Supplemental Record 102* at 6. The transcript of this conference suggests that both the Fund and the Tribune reasonably understood the district court's remarks to mean that a ruling on the cross-motions for summary judgment would be forthcoming. Their interpretation proved to be erroneous. Shortly after the conference and to the surprise of both parties, the district court dis-

missed the Fund's suit with prejudice for the Fund's lack of prosecution.

In ordering the suit dismissed, the district court wrote:

Because of the history of inattention to and inactivity in this case, the court is dismissing the case for want of prosecution. The court is tremendously dismayed that two years passed between the time the Seventh Circuit dismissed the appeal and the time that the litigants returned to this court. As the Seventh Circuit observed in its order dismissing the appeal, the requested injunctive relief—submission to the audit—was actually conducted. All that remained was for the Fund to obtain a money judgment based on the audit. The plaintiff failed to prosecute, however. In fact, it was due to Defendant's action (its August 15 motion to reconsider—styled a motion for summary judgment) rather than any action on the plaintiff's part that this case found its way back to this court.

Rule 21 of the General Rules of the Northern District of Illinois governs dismissals for want of prosecution. Rule 21(a) provides in relevant part:

Cases which have been inactive for more than six months may be dismissed for want of prosecution.

The Fund has failed to offer the court a reasonable explanation as to why the case was inactive for twenty-two months. In the parties' Joint Status Report, they state that following the dismissal of the appeal, "the parties engaged in extensive settlement negotiations," ultimately concluding, however, that the case could not be resolved by settlement.

It is laudable that the parties engaged in efforts to settle. Nonetheless, their settlement efforts in no way excuse plaintiff's failure to prosecute this case for close to two full years. The plaintiff should have moved for a stay if it believed that settlement was imminent. Once a party invokes the judicial system by filing a lawsuit, it must abide by the rules of the court; a party can not decide for itself when it feels

---

the Fund's cross-motion, which followed soon thereafter) were truly cross-motions for summary judgment, we will indulge the tradition and refer

to the motions to reconsider as motions for summary judgment.

like pressing its action and when it feels like taking a break because "[t]rial judges have a responsibility to litigants to keep their court calendars as current as humanly possible." *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 608 (7th Cir.1986). In this case, the plaintiff unilaterally decided to take a break from litigation. The consequences of that decision and a delay of such length are grave: dismissal for want of prosecution.

The briefs filed last fall are too little and too late to overcome the two year history of inactivity. They are too little because they are not even fully briefed cross motions. Defendant's motion did not even receive a formal response from the plaintiff. Although the defendant did respond to the plaintiff's motion, the plaintiff never filed a reply to the response brief. Moreover, last fall's exchange of briefs occurred as a result of the defendant's initiative, not the plaintiff's. In any event, the briefs came too late to matter. Two years of inactivity provide ample grounds for this court's ruling.

The Fund appeals.

## II.

## A.

■ It is well-established that district courts possess inherent authority to dismiss a case *sua sponte* for a plaintiff's failure to prosecute. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). The authority is not unfettered, of course, and the district court must perpetually balance the competing interests of keeping a manageable docket against deciding cases on their merits. *Webber v. Eye Corp.*, 721 F.2d 1067, 1071 (7th Cir.1983). The drastic nature of a dismissal with prejudice requires the action to be used "only in extreme situations, when there is a *clear record of delay* or contumacious conduct, or when other less drastic sanctions have proven unavailable." *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1061 (7th Cir.1989) (original emphasis). Neither the lack of a "warning shot" nor the absence of prejudice to the defendant necessarily renders an involuntary

dismissal void. *Link*, 370 U.S. at 632, 82 S.Ct. at 1389; *Daniels v. Brennan*, 887 F.2d 783, 788–89 (7th Cir.1989).

■ It is "axiomatic" that our consideration of a dismissal for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure is governed by an abuse of discretion standard of review. *Anderson v. United Parcel Service*, 915 F.2d 313, 315 (7th Cir.1990). We will conclude an abuse of discretion has occurred only when "[t]he district court's decision ... strikes us as fundamentally wrong," *id.*, or when "it is clear that no reasonable person could concur in the trial court's assessment of the issue under consideration." *Daniels*, 887 F.2d at 785. Given this standard of review, we must examine the particular procedural history of the case and the situation at the time of the dismissal. *Id.* at 786.

## B.

■ Here, there is no suggestion that the Fund's conduct was contumacious; instead, the district court dismissed the Fund's suit on account of a perceived lack of prosecutorial intent during the twenty-two month negotiation period between the dismissal of the Tribune's appeal in October 1989 and the parties' submission of their cross-motions for summary judgment in August and September of 1991. A court may infer a lack of prosecutorial intent from such factors as the withdrawal of an attorney, the failure to appear at a scheduled hearing, and a failure to appear on time. *Zaddack v. A.B. Dick Co.*, 773 F.2d 147, 150 (7th Cir.1985) (citations omitted).

None of the factors listed in *Zaddack* are present in this case. Further, the Fund did not fail to respond adequately to discovery requests, did not repeatedly miss deadlines, and did not engage in "a continuing pattern of delay, non-cooperation[,] and disobedience," as was the case in *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1179 n. 4 (7th Cir.1987); it did not delay five months in serving process, did not fail to appear at certain scheduled hearings, did not appear at other hearings wholly unprepared to proceed, and did not display a "distinct

lack of prosecutorial intent dat[ing] back to the inception of the case[,]" as in *Daniels,* 887 F.2d at 786; and it did not disregard pre-trial orders, did not request numerous continuances, did not fail to file pre-trial orders, and did not "flagrant[ly] abuse [ ] judicial time and resources," as in *Pyramid Energy,* 869 F.2d at 1061 n. 7. To the contrary, the Fund punctually attended all scheduled court hearings, complied with all briefing schedules, and timely observed all judicially-imposed deadlines both before and after the 22–month settlement negotiation period. At the time of dismissal, the Fund had filed a cross-motion for summary judgment, a response to the Tribune's statement of uncontested facts, its own statement of uncontested facts, and a supporting memorandum of law, all in accordance with the district court's schedule. It had faithfully attended all status conferences and, with the Tribune's help, had taken considerable time and expense to reconstruct the entire missing file for the district court's benefit.

The only possible indication of a lack of prosecutorial intent on the Fund's part, then, is its failure to advise the district court of the ongoing settlement negotiations with the Tribune during the 22–month period. Certainly the wiser course of action would have been to keep the district court advised of the existence and status of settlement negotiations; had the plaintiff-appellant done so, in all likelihood it would not be here today. Be that as it may, we are unpersuaded that the Fund's failure to advise the district court of the settlement negotiations warranted the fatal response delivered.

As we have said, dismissal with prejudice is an extreme sanction, appropriate only when there is a clear and unambiguous record of delay. We find no such record in this case. Following the first appeal's dismissal in October 1989, the Fund undertook extensive and complicated negotiations with the Tribune in good-faith. When, in August 1991, the parties' positions became intractable and it became clear there was no alternative, the parties immediately turned to the district court for authoritative and final resolution of their dispute. We agree with the sensible observation in *E.E.O.C. v. Firestone*

*Tire and Rubber Co.,* 626 F.Supp. 90, 94 (M.D.Ga.1985) that

> The pendency of settlement negotiations obviously is an acceptable excuse for some delay in a plaintiff's prosecution of its case, but the pendency of negotiations is not an excuse where the delay is unreasonably long (a period of [four] years in this case), or if it continues after it is apparent that the negotiations would not be fruitful.

*See also Morris v. Ocean Systems, Inc.,* 730 F.2d 248, 249 (5th Cir.1984) (settlement efforts and plaintiff's attempt to secure substitute counsel, both activities of which the district court was not aware, negated what may otherwise have been considered a clear record of delay; *sua sponte* dismissal with prejudice reversed). By examining the circumstances surrounding the settlement negotiations, a district court can prevent parties who truly have failed to prosecute from reviving or continuing their suits simply by claiming to have been engrossed in the commonly desirable task of settlement. The negotiations in this case, we are convinced, were conducted in good faith, and were neither unreasonably long nor pursued after it became apparent they would not be fruitful. Rather than revealing a clear record of delay, the record here discloses a positive and earnest movement toward resolution of the dispute.

Alternatively, the Tribune contends we should affirm the dismissal based on Rule 21(a) of the General Rules of the Northern District of Illinois, which provides, in part, that "[c]ases which have been inactive for more than six months may be dismissed for want of prosecution." We reject the application of the rule to this case. As the preceding discussion should have made clear, we do not consider the Fund's prosecution to be wanting, despite the fact the district court was not kept abreast of the continuing efforts at settlement for nearly two years. We note both parties to the suit registered complete surprise with the district court's action, suggesting that both parties considered the suit to be proceeding in due course. To the extent the rule may be applied in a manner inconsistent with established case law hold-

ing that dismissal following more than six months' inactivity will at times amount to an abuse of discretion, the application of Rule 21(a) must give way.[3] Under Rule 83 of the Federal Rules of Civil Procedure, district courts are authorized to "make and amend rules governing its practice not inconsistent with these rules." *See also Brown v. Crawford County,* 960 F.2d 1002, 1008 (11th Cir. 1992) ("District courts are not required to adopt local rules, but they *must not* circumvent the Federal Rules of Civil Procedure ...") (original emphasis). Although occasionally there will be cases where dismissal for failure to prosecute is warranted, this case falls far short. Because dismissal in this case was not warranted under Fed. R.Civ.P. 41(b), it was not warranted under the local rule.

Even if the parties's behavior during the 22–month lull can be fairly characterized as lacking diligence (a characterization we find inappropriate based on our reading of the record), "an earlier lack of diligence is not grounds for dismissal when the plaintiff is currently displaying diligence." *Marks v. San Francisco Real Estate Bd.,* 627 F.2d 947, 948 (9th Cir.1980). Immediately upon realizing further negotiations were pointless, the Fund filed its so-called cross-motion for summary judgment, supported it with the required materials, and diligently participated in all meetings with the district court. There is no rule barring a court from keeping an accurate and up-to-date log of its case load; in fact, good court administration demands it. The only suggestion of a lack of prosecutorial intent during the period following the conclusion of the settlement negotiations on the court's part is its observation that the parties' briefs were "too little and too late." We note, however, that on April 17, 1992, the district court stated its opinion that additional briefs were unnecessary. And to the extent the district court dismissed

the Fund for its failure to address the Tribune's argument that the most recent collective bargaining agreement superseded the pension subscription agreement, the appropriate action would have been a ruling on the merits.

Further, after having previously accepted the parties' motions and supporting materials and led the parties to believe a decision on the merits was imminent, the district court wrote that had it been apprised of the case's procedural history all along, it would not have allowed the parties to proceed with their cross-motions for summary judgment. The district court seemed to base its claim on its wholly unexplained and unsubstantiated remark that the parties "were not straightforward with the court about the case's procedural history when the case first reappeared." Based upon the record, we are forced to disagree with the district court's comment; the transcript from the September 12, 1991 hearing conclusively demonstrates the parties were entirely straightforward with the court.

Finally, we are not persuaded by the district court's comment that "[t]he plaintiff should have moved for a stay if it believed settlement was imminent." First, even the other party to the suit did not claim settlement was "imminent." Second, we agree with the sentiment expressed by Judge Goldberg that "[w]here a discretionary stay is proposed, something close to genuine necessity should be the mother of its invocation." *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.,* 761 F.2d 198, 203 n. 6 (5th Cir.1985) (arbitration context). A stay was simply unnecessary in this case.

For the foregoing reasons, we conclude the district court's dismissal with prejudice amounted to an abuse of its discretion. We therefore **REVERSE** and **REMAND** the cause to the district court pursuant to Circuit Rule 36

---

**3.** For examples of cases reversing dismissals following a period of inactivity exceeding six months, *see Schenck v. Bear, Stearns & Co.,* 583 F.2d 58 (2nd Cir.1978) (abuse of discretion to dismiss with prejudice after eleven months of inactivity) and *Flaksa v. Little River Marine Con-* *struction Co.,* 389 F.2d 885 (5th Cir.), *cert. denied,* 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968) (abuse of discretion to dismiss with prejudice following attorney's eight month period of inactivity and appearance at pretrial conferences unprepared).

for further proceedings.[4]

---

4. Judge Cudahy would not invoke Circuit Rule 36.