32 F.3d 570
 74 A.F.T.R.2d 94-6184
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Evelyn K. NICHOLS, Defendant-Appellant.
 No. 93-1873.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 28, 1994.*
Decided Aug. 24, 1994.
 
 Before CUDAHY, EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 Evelyn K. Nichols appeals from a default judgment and order of foreclosure entered against her and three other defendants, including her late husband, Harold A. Nichols, in this suit brought by the government to collect the unpaid federal income taxes of Harold Nichols. See 26 U.S.C. Sec. 7403. Despite Evelyn Nichols's timely objections to the entry of default and of default judgment, the district court made no determination as to whether Harold Nichols's conveyance to Evelyn of the property upon which it ordered foreclosure was fraudulent. We therefore vacate and remand.
 
 
 2
 In 1989, the government filed a complaint against Harold and Evelyn Nichols, their son Glenn, and the First Federal Savings Bank of Wisconsin (Bank), seeking to reduce to judgment outstanding federal tax assessments against Harold Nichols for the taxable years 1983 and 1984, to set aside as fraudulent Harold Nichols's conveyance of his one-half interest in his residence to Evelyn and Evelyn's subsequent transfer of the property to Glenn (to occur upon Evelyn's death), and to foreclose its tax lien against Harold's interest in the residence.[1] Several months later, the Nicholses moved to dismiss the complaint on the basis of frivolous challenges to the court's jurisdiction. In denying the motion, the district court directed the defendants to file an answer to the complaint within ten days, and warned them that failure to respond would result in the entry of a default judgment. The Nicholses answered within the ten-day time limit, denying that Harold's conveyance to Evelyn of his property interest was fraudulent, and renewing their frivolous jurisdictional arguments. In response to the district court's notice of a status conference, to be held on May 25, 1990, Harold Nichols indicated that he would refuse to participate in any proceedings absent proof of jurisdiction. The district court advised Nichols that his submissions were abusive and frivolous, and advised all the defendants that failure to appear at the status conference could result in the entry of a default judgment against them.
 
 
 3
 No defendant appeared for the May 25, 1990 status conference. The district court then issued an order stating that unless the defendants filed affidavits showing good cause for their failure to appear, it would strike their answer from the record and enter a default judgment. Harold Nichols filed an affidavit asserting that the district court was without jurisdiction over him and that the IRS had no right to collect income taxes from him. He also asserted that ill health had prevented him from appearing at the status conference. The district court determined that Harold Nichols's failure to appear was due solely to his refusal to accept the court's previous rulings advising him of the frivolity of his argument, and ordered that the Nicholses' answer be stricken from the record. The court also directed the government to prepare a proposed final judgment. On July 7, 1990, the court entered default judgment against Harold Nichols for his unpaid federal income taxes, penalties, and interest for the years 1983 and 1984. It also ordered that the tax liens against Nichols's one-half interest in the residence be foreclosed, and that the residence be sold at public auction with one-half the proceeds paid to Evelyn Nichols. The district court did not, however, enter final judgment against the other three defendants; nor did it set aside as fraudulent the prior transfer of the interest to Evelyn Nichols, which in turn would negate the contract for transfer to Glenn Nichols. Because the district court's July 7, 1990 default judgment thus did not constitute a final and appealable order resolving all the claims of the parties, Harold Nichols's appeal was dismissed for want of jurisdiction. United States v. Nichols, No. 90-2574 (7th Cir. Jan. 13, 1992) (unpublished).
 
 
 4
 In light of this court's order of January 13, 1992, as well as Harold Nichols's intervening death, the district court determined that further proceedings were necessary. It accordingly reopened the case and ordered that a hearing be held on the government's request for entry of default and of default judgment against the remaining defendants. United States v. Nichols, No. 89-C-1409 (E.D.Wis. May 13, 1992) (unpublished). Although it ordered the government to file a motion pursuant to Fed.R.Civ.P. 25 to substitute a successor or representative of the deceased as a party to the proceedings, and the government complied, the record reveals that the motion was never ruled on. On June 10, 1992, the court held a status conference at which the Bank again failed to appear, resulting in the entry of default judgment against it.[2] After settlement negotiations between the government and Evelyn Nichols proved fruitless, the government renewed its request that default judgment be entered against the two remaining defendants, Evelyn and Glenn. On February 4, 1993, the court issued an order stating that it would grant the government's request unless the Nicholses demonstrated that they had a meritorious defense to the action. In her response to that order, Evelyn Nichols asserted that the government's case was contingent upon proving that Harold's conveyance of his interest in their residence was fraudulent, and that the government had failed to do so. On February 25, 1993, without commenting on Evelyn Nichols's assertions, the district court notified the parties that final judgment would be entered in the form proposed by the government within fifteen days, and that the defendants would be permitted to object to the proposed final judgment within that time period. Evelyn Nichols filed timely objections to the proposed judgment, again contending that the government had failed to prove that the transfer of Harold's one-half interest in their home was fraudulent, and also maintaining that the government had failed to substantiate its assessments of tax liability as required under 26 U.S.C. Sec. 6203 and 26 C.F.R. Sec. 301.6203-1. The district court entered default judgment against her and Glenn Nichols on March 16, 1993, and Evelyn filed a timely appeal.
 
 
 5
 A district court's decision to enter a default judgment is guided by the same standards as its decision to dismiss a case for want of prosecution, for "both ... are sanctions for disruptive or dilatory conduct in litigation." Philips Medical Systems Int'l B.V. v. Bruetman, 8 F.3d 600, 602 (7th Cir.1993).[3] "Since sanctions should be proportionate to wrongdoing, the district judge should compare the size of the default judgment, discounted by the probability of collection, with the gravity of the defendant's procedural lapses or other misconduct." Philips, 8 F.3d at 603. Moreover, as this court observed in the context of a dismissal for lack of prosecution, "an earlier lack of diligence is not grounds for dismissal when the plaintiff is currently displaying diligence." GCIU Employer Retirement Fund v. Chicago Tribune Co., 8 F.3d 1195, 1201 (7th Cir.1993) (internal quotations, citation omitted). By similar reasoning, Evelyn Nichols's earlier procedural lapses must be judged in light of her more recent efforts to defend this action. See Philips, 8 F.3d at 602-03.
 
 
 6
 Viewing Harold Nichols's pleadings as abusive and his failure to appear for the May 25, 1990 status conference inexcusable, the district judge entered a default judgment against him on July 7, 1990. Since Harold Nichols's premature appeal of that judgment was dismissed, however, Evelyn Nichols has complied with every district court order directing her to defend this action, and has presented several challenges to the entry of default judgment, at least some of which are not meritless on their face. In addition to her recent diligence in responding to the district court's orders, the record also reveals that in June 1992, Evelyn and the government attempted to settle this suit, and the government has never contended that Evelyn entered into settlement negotiations in bad faith or for purposes of delay. These facts call into question the propriety of entering default judgment, and lead us to believe that a closer look at the merits of Evelyn's arguments is warranted.
 
 
 7
 First, Evelyn contends that Harold Nichols's conveyance to her of his one-half interest in their home was not fraudulent. Our review of the final judgment of March 16, 1993, reveals that although the district court entered default judgment against Evelyn, Glenn, and the Bank, it did not expressly set aside as fraudulent the conveyance of Harold Nichols's one-half interest in his residence to Evelyn--indeed, the judgment makes no mention of the allegedly fraudulent conveyance, nor does it address the effect, if any, of Harold Nichols's death on the ownership interests of Evelyn in the property subject to the government's lien.[4] The district court summarily stated that "the Federal tax liens reduced to judgment July 7, 1990, pertaining to Harold A. Nichols attach to the following parcel of improved real property ...," United States v. Nichols, No. 89-C-1409 (E.D.Wis. Mar. 16, 1993) (unpublished), mirroring the language of the prior judgment, where it stated that "the Federal tax liens created by the ... income tax liabilities of Harold Nicholas (sic) incumber the below-described parcel of improved real property...." United States v. Nichols, No. 89-C-1409 (E.D.Wis. July 7, 1990) (unpublished). As this court observed in its previous order, "the court-ordered foreclosure and sale of the property to satisfy Harold's liens [is] impossible without setting aside the prior transfer to Evelyn which would negate the contract for later transfer to Glenn." United States v. Nichols, No. 90-2574 (7th Cir. Jan. 13, 1992) (unpublished); see 26 U.S.C. Sec. 7403(c); United States v. Rodgers, 461 U.S. 677, 712 (1983) (under Sec. 7403, the government may collect on an individual's tax debt only "out of that portion of the proceeds of the sale representing property interests properly liable for the debt") (emphasis omitted).
 
 
 8
 In its order accompanying the final judgment, the district court stated that it was granting default judgment against Evelyn and Glenn Nichols because "[they] have established no good cause why default judgment should not also be granted and entered against them." United States v. Nichols, No. 89-C-1409 (E.D.Wis. Mar. 16 1993) (unpublished). The government points to this statement as an implicit rejection of Evelyn's claim that Harold Nichols's conveyance of his one-half interest was not fraudulent, and asks us to uphold the judgment on the ground that under the Wisconsin law in effect at the time of the transaction, a conveyance made "with intent to hinder, delay or defraud either present or future creditors,"[5], or one made without fair consideration "by a person who is or will be thereby rendered insolvent" to the detriment of his creditors,[6] may be set aside as fraudulent. See Wis.Stat. Sec. 242.09(1) (1987).
 
 
 9
 There are several difficulties with this argument. Section 7403(c) requires the district court to "finally determine the merits of all claims to and liens upon the property." 26 U.S.C. Sec. 7403(c). In Rodgers, the Supreme Court observed that when the government proceeds to collect unpaid taxes under Sec. 7403, the rights of third parties must be meticulously protected. 461 U.S. at 696-699. Evelyn Nichols was before the court asserting a claim to the property on the basis of a prior conveyance which the government contends was fraudulent and she insists was not. Under Wisconsin law, the elements of a fraudulent conveyance must be established by "clear and convincing evidence." In re Loyal Cheese Co., 969 F.2d 515, 518 (7th Cir.1992). Yet the record contains no determination by the district court either that Harold Nichols made the conveyance to his wife with the intent to defraud the United States, or that the conveyance did in fact render him insolvent to the detriment of the United States.[7] See Wis.Stat. Secs. 242.02(1), 242.04, 242.07 (1987). In the absence of factual findings, we are unable to conclude that the conveyance was fraudulent under Wisconsin law, and that Evelyn's defense to this action is therefore without merit.
 
 
 10
 Evelyn Nichols also asserts that the government has not substantiated its assessments of tax liability as required by 26 U.S.C. Sec. 6203. Because default judgment was properly entered against Harold in 1990, Evelyn now bears the burden of demonstrating that the default should be set aside. See United States v. DiMucci, 879 F.2d 1488, 1493-95 (7th Cir.1989); Fed.R.Civ.P. 55(c). To meet this burden, Evelyn points to several apparent discrepancies in the documents establishing the amount of Harold's tax liability as evidence that the assessments were improperly made, and contends that 26 C.F.R. Sec. 301.6203-1 entitles her to a copy of the actual record of assessment signed by the assessment officer.[8] It is, however, well-established that a record of assessment is not the only means by which the government may establish tax liability. Other documents which have been held to constitute presumptive proof of a valid assessment include, for example, the Certificate of Assessments and Payments, commonly referred to as a Form 4340. See Geiselman v. United States, 961 F.2d 1, 6 (1st Cir.), cert. denied, 113 S.Ct. 261 (1992); Hughs v. United States, 953 F.2d 531, 535 (9th Cir.1992); United States v. Walton, 909 F.2d 915, 919 (6th Cir.1990); United States v. Chila, 871 F.2d 1015, 1017-18 (11th Cir.1988), cert. denied, 493 U.S. 975 (1989). Although the government did not submit a Form 4340 in this case, it did produce an affidavit signed by the District Director of Internal Revenue, accompanied by an exhibit which provides all the information required by 26 C.F.R. Sec. 301.6203-1.[9] Furthermore, our examination of the assessed amounts stated in the District Director's affidavit reveals that they are consistent with the amounts stated in the government's complaint, as well as with those stated in the certified transcripts of account provided to Evelyn but not made part of the record before the district court.[10] Evelyn's challenge to the default judgment on the ground that the amount of tax liability assessed against her late husband was in error thus fails.
 
 
 11
 Because the district court did not determine whether Harold's conveyance to Evelyn Nichols of his one-half interest in the property upon which it ordered foreclosure was fraudulent, and thus did not determine the merits of all claims upon the property as mandated by Sec. 7403(c), we
 
 
 12
 VACATE and REMAND.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 Harold and Evelyn Nichols held title to their residence in fee simple as joint tenants. Under Wisconsin law, Harold and Evelyn each had an equal interest in the whole property. See Wis.Stat. Sec. 700.17(1)-(2)(a)
 
 
 [2]
 In a letter dated May 14, 1992, the Bank indicated that Harold and Evelyn Nichols had paid off the mortgage on their home in 1972
 
 
 [3]
 In Philips, the court held that the standards set forth in Ball v. City of Chicago, 2 F.3d 752 (7th Cir.1993), governing dismissals for failure to prosecute also apply to entries of default judgment. See Philips, 8 F.3d at 602. In Ball, the court stated that a decision to dismiss a case for want of prosecution "should ... take full and careful account of the frequency and magnitude of the plaintiff's failures to comply with deadlines," Ball, 2 F.3d at 759, as well as the likely merits of the suit, see id., but that the decision may not be based on dislike for a particular class of litigants. See id
 
 
 [4]
 We note that once a lien has attached to an interest in property, it cannot be extinguished by a transfer or conveyance of that interest. See 26 U.S.C. Sec. 6323; United States v. Bess, 357 U.S. 51, 57 (1958)
 
 
 [5]
 Wis.Stat. Sec. 242.07 (1987)
 
 
 [6]
 Wis.Stat. Sec. 242.04 (1987)
 
 
 [7]
 Cf. United States v. Hoffman, 643 F.Supp. 346, 348-49 (E.D.Wis.1986) (district judge expressly set aside taxpayer's conveyance as fraudulent under Wisconsin law prior to ordering foreclosure and sale under Sec. 7403)
 
 
 [8]
 Although the government filed a Rule 25 motion before the district court to substitute Evelyn as Harold's successor (R. at 29), it now contends that Evelyn has no standing to challenge the assessment. If the government is correct that Harold's conveyance of his one-half interest in the property was fraudulent, Harold's one-half interest passed to Evelyn upon his death. See Wis.Stat. Sec. 700.17(1)-(2)(a). Since the default judgment provides that Harold's unpaid tax debt be satisfied from the sale of that interest, Evelyn has standing to challenge the amount of the assessment. Cf. Warth v. Seldin, 422 U.S. 490, 499 (1975) (litigant must assert his own legal rights and interests, not those of a third party)
 
 
 [9]
 (R. at 38.)
 
 
 [10]
 (Appellant's Br., App. at 8.)