In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-1604

JOE RICE,

*Plaintiff-Appellant*,

v.

THE CITY OF CHICAGO, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CV 7949—**Robert W. Gettleman**, *Judge*.

ARGUED OCTOBER 16, 2002—DECIDED JUNE 24, 2003

Before COFFEY, RIPPLE, and WILLIAMS, *Circuit Judges*.

COFFEY, *Circuit Judge*. Joe Rice ("Rice"), with five other plaintiffs, filed suit against the City of Chicago and several Chicago police officers on December 11, 1998. They alleged that the defendants had violated their civil rights six months earlier, on June 14, 1998, the evening the Chicago Bulls' victory in the NBA Championship Finals sparked riotous celebrations throughout the Chicago area.

On March 7, 2002, the district court dismissed Rice as a plaintiff from the suit because Rice's attorney had allegedly failed to comply with several court-imposed

deadlines relating to discovery requests.[1] Rice appeals, arguing that dismissal of his case was unwarranted and unfair, given the City's own dilatory tactics. We agree that the district judge abused his discretion in dismissing Rice's case. The attorneys for the City of Chicago were as guilty as Rice's attorney of disobedience of court orders, and we believe that the sanction of dismissal is not warranted in this instance. Thus, we remand for further proceedings consistent with this opinion.

## I.  FACTUAL BACKGROUND

Rice alleges that on the evening of June 14, 1998, he was riding around the City of Chicago celebrating the Bulls' victory over the Utah Jazz in the NBA Finals. Rice, who was 14 years old at the time, was riding on the roof of an automobile which was carrying nine other revelers. Two of the other occupants were riding in the vehicle's open trunk.

Just after the auto stopped in front of a liquor store near the intersection of Roosevelt Road and Springfield Avenue, Rice claims that several officers approached the vehicle, one of whom began making racial comments intended for the car's occupants. This officer then allegedly cursed at Rice and his friends, and ordered them to leave the area at once under the pretext that the store was closed (Rice maintains that the store was not, in fact, closed). Rice further alleged that an officer, without justification, then started to spray Rice and the other occupants of the car with mace. Finally, Rice claims that

---

[1] Rice was the only plaintiff to be dismissed. The other plaintiffs met the relevant discovery deadlines and their claims proceeded under a case entitled *Brown v. City of Chicago*, 98 C 3763.

several officers then began discharging their weapons at the car, again without any provocation, and that Rice and several of the other occupants suffered injuries.

On December 11, 1998, Rice and five other occupants of the car filed a civil rights lawsuit against the individual defendant officers and the City of Chicago. The plaintiffs claimed, *inter alia*, that the individual defendant officers had used excessive force against them on the evening of June 14, 1998, and that the City's policies and practices were a proximate cause of their injuries. The case was initially dismissed for want of prosecution on July 26, 2000, but on plaintiffs' motion, the court vacated the dismissal and reinstated the lawsuit in September 2000.

On May 30, 2001, the officers served interrogatories and document requests upon the plaintiffs, including Rice. The responses were due on June 29. Rice, through his attorney David A. Cerda, served the officers with objections to their discovery requests on July 2, but failed to complete all of the answers to the interrogatories. On August 23, Magistrate Judge Edward A. Bobrick, to whom the court had assigned discovery matters, ordered Rice's attorney to make full responses by September 28, and warned him that the failure to do so would result in the dismissal of Rice's case.

Attorney Cerda failed to respond to the discovery requests within this court-imposed deadline. The court extended another opportunity to Cerda to comply with the court's discovery order, warning that Rice's case would be dismissed if Cerda failed to provide complete responses to the defendants' interrogatories by October 26, 2001. On October 30, the defendants received an envelope (postmarked October 29) with interrogatories that were not only late, but also incomplete and not verified by Rice himself.

At a hearing on the motion on November 5, Cerda explained that the October 29 postmark resulted from his mailing of the responses after 5:00 p.m. on Friday, October 26. Cerda also stated that the reason he could not locate Rice was because the plaintiff had been confined in the Cook County Jail under the name Joe Moore. Cerda further explained that when he met with Rice at the jail on October 25, Cerda asked his client whether he could read and understand his answers to the interrogatories if they were typed for him. When Rice replied that he was illiterate, Cerda decided not to pursue the matter any further (*e.g.*, possibly certifying Rice's responses after reading them back to Rice and explaining them to him).

At a hearing on February 6, 2002, the district court considered the magistrate judge's recommendation that Rice's case be dismissed. The district judge noted that the basis for the magistrate's recommendation of dismissal was that Rice had disobeyed the magistrate's discovery orders on two separate occasions. The plaintiff's motion for reconsideration was denied, and the court entered final judgment dismissing Rice as a party plaintiff, against the individual defendant officers as well as the City of Chicago, on March 7, 2002.

But this is only half the story. During the last three months of 2001, the attorneys representing the City of Chicago consistently and repeatedly stonewalled the plaintiff's attempts to conduct depositions. This pattern of conduct persisted even in the face of explicit court orders ordering both parties to comply with the discovery requests. On August 23, 2001, for example, the magistrate ordered the plaintiffs' depositions to be completed by January 15, 2002. The defendants' attorneys, however, repeatedly insisted that they were too busy to schedule depositions during the months of October, November, and December.

On December 11, the plaintiffs filed a Motion to Compel Discovery after defendants had failed to respond to plaintiffs' numerous requests for a conference to discuss deficiencies in the defendant officers' interrogatory responses. On January 2, 2002, plaintiffs argued a Motion to Compel Depositions before the court because the plaintiffs' January 15 deadline for depositions was approaching and the defendants still had refused to schedule a single deposition. The magistrate subsequently ordered the depositions of the plaintiffs and the defendants to be completed by March 11. On January 22, plaintiffs filed another Motion to Compel Depositions because the defendants had continued their pattern of remaining adamant in their position and continued to refuse to schedule any depositions. On February 5, the plaintiffs again filed a Motion to Compel because the City's counsel claimed to be too busy to produce non-party police officer witnesses for depositions. All of the aforementioned delays occurred prior to the March 7, 2002, entry of final judgment dismissing Rice as a party plaintiff. Obviously, neither party to this litigation stood before the court with clean hands.

## II. DISCUSSION

We review the district court's imposition of sanctions for discovery violations, including dismissal of the case with prejudice, under the abuse of discretion standard. *Dotson v. Bravo*, 321 F.3d 663, 666 (7th Cir. 2003); *accord Jimenez v. Madison Area Technical College*, 321 F.3d 652, 657 (7th Cir. 2003). As our case law makes very clear, however, this standard "is not without teeth." *Salgado v. General Motors Corp.*, 150 F.3d 735, 739 (7th Cir. 1998); *see also, e.g.*, *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 425 (7th Cir. 1998) (reversing a dismissal because the "facts fail[ed] to evidence a clear record of delay or con-

tumacious conduct," despite the plaintiff's failure to prosecute the case for three years); *GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 8 F.3d 1195, 1199 (7th Cir. 1993) (reversing a dismissal when the litigant had failed to advise the court on the status of settlement negotiations during a 22-month period); *Del Carmen v. Emerson Electric Co. Commercial Cam Div.*, 908 F.2d 158, 163 (7th Cir. 1990) (reversing a dismissal that had been based on the failure of the plaintiff's counsel to attend a status conference).

"The drastic nature of a dismissal with prejudice requires the action to be used only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable." 8 F.3d at 1199 (internal quotations omitted); *cf. Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000) ("[The] ultimate sanction is reserved for cases in which the offending party has demonstrated wilfulness, bad faith, or fault."). "In determining whether the sanction of dismissal constituted an abuse of discretion, we look at the entire procedural history of the case." *Long*, 213 F.3d at 986; *accord Grun*, 163 F.3d at 425. Although there is no requirement that the district court select the "least drastic" sanction, district courts should only impose sanctions that are "proportionate to the circumstances surrounding a party's failure to comply with discovery rules." *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 672 (7th Cir. 1996). Among the factors included in the analysis are "the frequency and magnitude of the [party's] failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit." *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998).

Turning to the record in the case before us, the court reasoned that dismissal was warranted because Rice had

repeatedly refused to obey "orders by the magistrate judge to comply with his discovery obligations." Although it is true that Rice failed to meet three separate deadlines to file his interrogatory responses,[2] the judge overlooked the fact that the City's attorneys were equally disrespectful of the court's orders, effectively giving them a pass—for reasons unexplained in his decision. Their conduct with respect to requests to conduct depositions, described in detail above, can best be described as dilatory and disrespectful to the court. We thus consider the defendants' stated concern about the *plaintiffs'* conduct causing harm to the district court[3] disingenuous and rife with irony. If the City was genuinely concerned about wasting the court's time, its attorneys would not have repeatedly engaged in the same type of disrespectful, careless, negligent, and evasive behavior that required the court to intervene in four discovery disputes in less than two months. It was the City's dilatory conduct—not Rice's—that ultimately resulted in a three month postponement of the plaintiffs' depositions.[4] If the defendants' attorneys were as busy as they claimed, the City should have retained outside counsel.

Particularly in this litigious age, court dockets are all too frequently overloaded. Time is no less valuable to a court than it is to an attorney. The court must set pre-

---

[2] Rice failed to meet the initial June 29, 2001, deadline, pursuant to Fed. R. Civ. P. 33(b)(3), and thereafter the court ordered deadlines of September 28 and October 26.

[3] During oral argument the Corporation Counsel for the City of Chicago conceded that the defendants were not prejudiced, but claimed that, "The prejudice here was to the district court."

[4] On August 23, 2001, the magistrate ordered the plaintiffs' depositions to be completed by January 15, 2002. However, it was mid-April before all of the plaintiffs were deposed.

scribed times, dates, and deadlines, and the attorneys must respect and comply with these deadlines, which need to be enforced if the court is going to properly manage its calendar. Although we hold that it was most proper for the district court to admonish Rice's attorney for failing to meet discovery deadlines[5] and not verifying Rice's answers to the interrogatories,[6] we conclude that the dismissal of Rice as a party plaintiff was an abuse of discretion because, when we review the sanction in light of the entire procedural history of this case (and the disrespectfulness to the court displayed by the litigants in this case), as we are required to do, *see Grun*, 163 F.3d at 425, it is apparent that both attorney Cerda as well as the attorneys for the defendants were equally careless and negligent in complying with their discovery obligations. Thus, as we pointed out earlier, neither the City of Chicago nor the officers came before this Court with clean hands. Furthermore, we find no merit behind the City's assertion that Rice demonstrated bad faith or fault worthy of the ultimate sanction of dismissal. *See Long*, 213 F.3d at 987 (defining "fault" in the context of discovery sanctions as "objectively unreasonable behavior; it does not include conduct that we would classify as a mere mistake or slight error in judgment"); *Marrocco v. General Motors Corp*, 966 F.2d 220, 224 (7th Cir. 1992) (defining "bad faith" as conduct which is "intentional or in reckless disregard of a party's obligations to comply with a court order"). On the two occasions Rice failed

---

[5] If Rice's attorney was legitimately unable to meet the three separate and distinct deadline dates, months apart, to file Rice's interrogatory responses, he should have raised the problem with the court *before* the relevant deadlines.

[6] Rice's attorney could very easily have read and explained the content of the responses to Rice and then request that he affirm them.

to comply with court ordered deadlines, there is nothing in the record that would justify classifying the plaintiff's attorney as "recklessly" disregarding his obligation to comply with a court order, as he filed an appropriate motion or the necessary papers within one week.[7]

It also would have been most helpful if the court had seen fit to consider and explain why lesser sanctions would not have been more appropriate. The defendants argue that there is no requirement in this circuit that district courts consider imposing lesser sanctions. The defendants contend that an explicit warning by the court is the only prerequisite before dismissing a party, and further note that the magistrate twice warned Rice that his failure to comply with court orders would result in dismissal.

While it is true that there is no requirement for district courts to impose graduated sanctions, *Ball v. City of Chicago*, 2 F.3d 752, 756 (7th Cir. 1993), it is well settled in this circuit that the ultimate sanction of dismissal should be involved "'only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable.'" *Grun*, 163 F.3d at 425 (quoting *Pyramid Energy Ltd. v. Heyl & Patterson, Inc.*, 869, F.2d 1058, 1061 (7th Cir. 1989)); *accord GCIU Employer Retirement Fund*, 8 F.3d at 1199; *Del Carmen*, 908 F.2d at 162; *Schilling v. Walworth County Park & Planning Comm'n*, 805 F.2d 272, 278 (7th Cir. 1986). As previously explained, Rice's tardy compliance with court orders did not contribute to a delay in discovery and, in light of evasive behavior

---

[7] When Cerda missed the September 28, 2001, deadline to file Rice's interrogatory responses, he moved for an extension on October 3. When Rice was ordered to answer interrogatories by October 26, 2001, he responded on October 30.

exhibited by the City's attorneys, it would be unjust to
characterize Rice's conduct as obstinately disobedient.
Therefore, contrary to the defendants' assertion, we are
of the opinion that when considering the present factual
history—where both of the litigants failed to respect
and comply with court imposed discovery time-lines—the
court abused its discretion by imposing a sanction on
only one of the malefactors, especially when the sanc-
tion employed is *dismissal*. As we said in *Ball*, where an
attorney is clearly at fault:

> [A] judge should give serious consideration to punish-
> ing the lawyer through a fine, an award of costs and
> attorney's fees to opposing counsel (the costs and fees
> to be paid by the plaintiff's lawyer, not the plaintiff)
> pursuant to Fed. R. Civ. P. 16(f), a citation for con-
> tempt, and professional discipline, rather than punish-
> ing the plaintiff through dismissal of the suit.

*Ball*, 2 F.3d at 758.

We conclude that the judge's imposition of the ultimate
sanction of dismissal was an improper exercise of the
district court's powers, when considering the complete
record of the case before us, as we must. Both the appel-
lant and the appellees were guilty of flagrantly disre-
garding discovery time-lines and refusing to pay heed
to court orders. Moreover, because it was the attorneys
and not the parties themselves who were at fault, the
court should have considered the appropriateness of
targeting the attorneys with lesser sanctions, such as a
fine or costs to the other party. Of course, "the trial court
has an intimate familiarity with the relevant proceed-
ings [and] is better situated than the court of appeals to
marshal the pertinent facts"; thus, whether to impose
sanctions and, if so, what form the sanctions will take, is
a decision we leave to the district court. *Jimenez*, 321
F.3d at 656 (citations and internal quotations omit-

ted). However, we again emphasize "[t]he well-established public policy favoring hearing cases on the merits . . . ." 908 F.2d at 163. This policy dictates that the harsh sanction of dismissal be employed only as a last resort. *GCIU Employer Retirement Fund*, 8 F.3d at 1199 ("The drastic nature of a dismissal with prejudice requires the action to be used only in extreme situations . . . ."). This is not one of those cases where dismissal was warranted. Accordingly, we REVERSE the district court's decision to dismiss Rice as a party plaintiff and REMAND the case for further proceedings consistent with this opinion.

A true Copy:

      Teste:

                _____

                *Clerk of the United States Court of Appeals for the Seventh Circuit*