In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3044

BRUCE A. WILLIAMS,

*Plaintiff-Appellant*,

*v.*

JASON ADAMS, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 646—**Wayne R. Andersen**, *Judge*.

SUBMITTED AUGUST 31, 2011—DECIDED SEPTEMBER 23, 2011

Before POSNER, ROVNER, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. The question presented by this appeal is: when is it proper to dismiss a suit because the plaintiff failed to pay a sanction if the only reason for the failure is that he doesn't have the money to pay it?

The plaintiff had filed this lawsuit pro se under 42 U.S.C. § 1983 against four police officers who he claimed had arrested him without probable cause and

in doing so had assaulted him (causing facial scars that made it impossible for him to follow his vocation of cosmetologist/educator), all in violation of his rights under the Fourth Amendment. The judge allowed him to proceed in forma pauperis. Eventually the judge granted summary judgment in favor of the defendants on a majority of the claims, but he ruled that the claims of excessive force against two of the defendants could proceed to trial.

The defendants' counsel sent the plaintiff a draft pretrial order, and the plaintiff retained, on a contingent-fee basis, a lawyer named Garry Alonzo Payton of Elgin, Illinois, to respond to it. Six months after the court's deadline for the filing of the final pretrial order, almost six months after Payton had entered his appearance in the district court, and after repeated, unsuccessful attempts by the defendants to elicit a response from Payton to the draft order, the defendants moved for sanctions under Fed. R. Civ. P. 16(f) (failure to cooperate in good faith in preparations for a pretrial conference). They asked the court either to dismiss the suit or to order reimbursement of the legal expenses they had incurred in their vain effort to obtain a response to their draft. The motion got the attention of the plaintiff and Payton. A week later the parties jointly submitted a final pretrial order. The defendants withdrew their request for dismissal, but continued to press for a monetary sanction.

With the final pretrial order filed, one might have expected the final pretrial conference (see Fed. R. Civ. P.

16(e)) to ensue, followed by the trial itself, which would have been short. Yet even though defendants were no longer seeking dismissal of the plaintiff's suit as a sanction, the judge did not set a trial date. Instead he referred the motion for sanctions to a magistrate judge, who after two hearings declared the plaintiff and Payton (who by now had withdrawn from the case and been replaced by another lawyer) jointly liable to the defendants for $9,055.14 (the additional fees they'd incurred because of Payton's lack of cooperation in the preparation of the final pretrial order), with a right of contribution between the plaintiff and Payton. The order directed that payment be made in full within 30 days.

The plaintiff attempted to negotiate with the defendants a plan under which he would pay down the $9,055.14 debt at a rate of $25 a month; that was, he claimed, the most he could afford because his monthly income was only $1,050 and his monthly expenses were $1,000. The defendants rejected the plan, and the 30 days passed without any payment by either the plaintiff or Payton.

Five months later the defendants moved to dismiss the suit under Fed. R. Civ. P. 41(b) (dismissal for failure to obey a court order), on the ground that by failing to pay, the plaintiff had violated the court's order to pay. The district judge agreed with the defendants and dismissed the suit. He said the failure to pay had been "contumacious," despite the plaintiff's inability to pay $9,055.14, or any significant part of it; in the words of the

lawyer who replaced Payton, the plaintiff is "almost a pauper."

The plaintiff's offer to pay off the sanctions debt at a rate of $25 a month, though it may well have been the best offer he could make given his financial situation, was, from the standpoint of compliance with the district court's order, risible; for at that rate it would have taken him more than 30 years to complete payment. He was given 30 days; he sought 11,000. But the court was mistaken to term the plaintiff's failure to pay "contumacious." No one doubts that he can't afford to pay the monetary sanction. Inability to pay a fine has been held not to justify the alternative of imprisonment, *Bearden v. Georgia*, 461 U.S. 660, 672-73 (1983); *Tate v. Short*, 401 U.S. 395, 397-98 (1971); *United States v. Seacott*, 15 F.3d 1380, 1389 (7th Cir. 1994), and a plaintiff's inability to pay a monetary sanction imposed in a civil lawsuit should not automatically justify the alternative sanction of dismissal. E.g., *English v. Cowell*, 969 F.2d 465, 473 (7th Cir. 1992); *Selletti v. Carey*, 173 F.3d 104, 111 (2d Cir. 1999); *Moon v. Newsome*, 863 F.2d 835, 837-38 (11th Cir. 1989).

Court-ordered punishments (as distinct from punishments specified in legislation) are required to be proportioned to the wrong. *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011); *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003); *Smith v. Gold Dust Casino*, 526 F.3d 402, 405 (8th Cir. 2008); *Malot v. Dorado Beach Cottages Associates*, 478 F.3d 40, 45 (1st Cir. 2007). To ignore a party's inability to pay a sanction could result in a disproportionate punishment—as this case illustrates. The

plaintiff's suit had enough merit to force two of the defendants to be placed on trial for a serious alleged wrong. Had the trial not been aborted by dismissal of the suit as a sanction for nonpayment of the $9,055.14 sanction, and had the plaintiff won at trial (and on appeal, if one were taken), he might well have obtained a judgment for significantly more than the amount he owed. He thus would have been able to compensate the defendants in full, including whatever interest might be necessary to compensate them for the loss of the time value of the money they had expended as a result of Payton's misconduct. Once a case is set for trial, moreover, it has a positive settlement value, which in this case we know exceeds $9,055.14 because the defendants offered the plaintiff $10,000 in settlement—minus the $9,055.14 that they are owed.

In these circumstances dismissal was too severe a sanction. Not that inability to pay is an automatic defense to an alternative sanction of dismissal. Or that a litigant can elude a sanction by pointing, in this case justifiably, to the fact that the misconduct was his lawyer's. *Link v. Wabash R.R.*, 370 U.S. 626, 633-34 (1962); *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004); *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1180 (7th Cir. 1987); *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 419 (5th Cir. 2006); *Gripe v. City of Enid*, 312 F.3d 1184, 1189 (10th Cir. 2002). A plaintiff who gratuitously imposes huge unrecoverable costs on his adversary cannot successfully oppose dismissal on the ground that he can't pay those costs, for then abuse of the litigation process to harass a defendant would be underdeterred.

"[M]isconduct itself might warrant dismissal if a plaintiff's financial circumstances eliminate the effectiveness of sanctions as a remedy or as a deterrent." *Selletti v. Carey*, *supra*, 173 F.3d at 112 n. 12; see also *Moon v. Newsome*, *supra*, 863 F.2d at 838-39; *Herring v. City of Whitehall*, 804 F.2d 464, 468 (8th Cir. 1986) (per curiam). As the Supreme Court stated in a related context in *Williams v. Illinois*, 399 U.S. 235, 244 (1970), "the State is not powerless to enforce judgments against those financially unable to pay a fine; indeed, a different result would amount to inverse discrimination since it would enable an indigent to avoid both the fine and imprisonment for nonpayment whereas other defendants must always suffer one or the other conviction."

But as it turned out, the plaintiff's miserable financial situation did not cancel the monetary sanction that the court had imposed. We mentioned a possible favorable judgment and the suit's settlement value as potential sources of payment, but there has turned out to be a surer source. The plaintiff resourcefully complained to Illinois's Attorney Registration and Disciplinary Commission that Payton had been entirely responsible for the delay in responding to the draft pretrial order submitted by the defendants. The ARDC agreed—noting for example Payton's admission that he had no acquaintance with federal procedure and indeed had never filed a pretrial order before this case. The Supreme Court of Illinois, which supervises the ARDC and enforces discipline against members of the Illinois bar, ordered Payton to pay the entire $9,055.14 to the defendants and suspended him from practicing law for 45 days. Payton got

off lightly. Ignoring the need to prepare a pretrial order was inexcusable. Ignoring the order to pay sanctions was worse; it was contempt of court. His "excuse" of unfamiliarity with federal procedure is feeble. He voluntarily joined the federal bar and voluntarily took on the representation of the plaintiff in a federal case, which committed him to learn essential aspects of federal procedure that he may have been unfamiliar with—and anyway the defendants' motions and letters *told* him what he had to do.

Payton paid the defendants as directed by the Supreme Court, in full, and indeed did so before the defendants filed their brief in this appeal, though the brief does not mention the fact, as it should have done. (The plaintiff's reply brief does note it.) With the defendants fully compensated, the dismissal of the plaintiff's potentially meritorious suit when his own conduct has been blameless has become an unreasonable sanction—the plaintiff actually saved the defendants additional expense by complaining to the ARDC, for otherwise they would have had to do so, or sue Payton, to obtain payment of the fees awarded them by the district court.

The payment by Payton does not render the appeal moot, because the appeal is from the dismissal of the suit. For the reasons we've explained, the dismissal cannot stand.

This case, filed more than six and a half years ago, was derailed by the sanctions proceeding. With that proceeding now terminated, we trust that the district court will move the case to completion without further delay.

The judgment of dismissal is

REVERSED.